### School Administrators Association of New Haven et al. *v.* John Dow, Jr., et al.
### (12657)

Peters, C. J., Shea, Dannehy, Santaniello and Callahan, Js.

Argued April 8—decision released July 8, 1986

*Lubbie Harper, Jr.,* with whom, on the brief, was *Bruce L. Levin,* for the appellants (defendants).

*John M. Gesmonde,* for the appellees (plaintiffs).

Santaniello, J. This is an appeal from a decision of the trial court enjoining the defendants, the New Haven board of education (board) and John Dow, Jr., the superintendent of schools for New Haven, from terminating the employment contracts of ten school administrators and eliminating nine administrative positions. The plaintiffs, the school administrators association of New Haven (union) and nineteen indi-

vidual administrators, brought suit against the defendants alleging that the board's consideration of the dismissal of some of the plaintiffs and its elimination of the positions of others were invalid. The trial court, agreeing that the board's actions were "null and void" because the superintendent was not properly certified, enjoined the board from making the proposed changes. The defendants appeal, claiming that the court erred: (1) in concluding that the superintendent's improper certification rendered the board's actions invalid; (2) in granting equitable relief where there was an adequate remedy at law; and (3) in refusing to dismiss the action for lack of jurisdiction on the ground that the plaintiffs failed to exhaust their administrative remedies. The plaintiffs respond that the trial court acted properly and proffer four alternate grounds upon which the judgment below might be affirmed.[1] See Practice Book § 3012 (a). We conclude that the trial court lacked jurisdiction to hear the complaint brought by the plaintiffs and accordingly remand the case with direction to dismiss.

The facts as found by the trial court are undisputed. Dow, although not certified for the position, became the superintendent of schools for the city of New Haven on January 15, 1984. Approximately six months later he held a series of meetings with the school system's assistant superintendents and directors to reevaluate

[1] The alternate grounds offered by the plaintiffs to sustain the trial court's action are: (1) the defendants acted in excess of statutory authorization and in violation of the plaintiffs' constitutional rights; (2) the defendants acted without authority and to the detriment of the public interest; and (3) equitable relief was necessary to protect the plaintiffs from the bad faith and negligence of the defendants. The "fourth alternate ground" was phrased more like an issue for a cross appeal. It contests the trial court's refusal to order a hearing on damages. Because of our disposition of the case on jurisdictional grounds, we do not reach these four issues. For the same reason, we also do not reach the first and second claims raised by the defendants.

the performance of a number of school administrators. By letter dated July 2, 1984, he sent notice to ten of the individual plaintiffs stating that he planned "to discuss with the Board, at its Executive Session meeting on Monday, 9 July 1984 . . . [their] continued employment in [the] school district." The letter also informed them that the matter could be discussed at a public meeting if they so desired. The meeting was held as scheduled and the board of education, upon the recommendation of Dow, commenced dismissal proceedings against these ten individuals and eliminated the positions of nine other individual plaintiffs. On July 10, 1984, the board formally notified the group of ten plaintiffs that it had voted to consider terminating their employment contracts. Those individuals in response requested that the board give reasons for the proposed termination and requested that a hearing be held pursuant to General Statutes § 10-151 (d).[2] Dow responded

---

[2] General Statutes § 10-151 (d) provides: "The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified, provided such teacher, if qualified, shall be appointed to a position held by a teacher who has not attained tenure, and provided further that determination of the individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education; or (6) other due and sufficient cause. Nothing in this section or in any other section of the general statutes or of any special act shall preclude a board of education from making an agreement with an exclusive bargaining representative which contains a recall provision. Prior to terminating a contract, a board of education shall vote to give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with such board within seven days

on July 19, 1984, by saying that their termination was under consideration for, inter alia, "inefficiency or incompetence," "insubordination" and "lack of integrity."

The plaintiffs instituted this action on July 10, 1984, and hearings regarding their request for a permanent injunction were held on July 31 and August 1, 1984. No administrative hearings under General Statutes § 10-151 (d) have been conducted and the board has

after receipt of such notice, shall within the next succeeding seven days give such teacher a statement in writing of the reasons therefor. Within twenty days after receipt of written notice by the board of education that contract termination is under consideration, such teacher may file with such board a written request for a hearing. Such hearing shall commence within fifteen days after receipt of such request, unless the parties mutually agree to an extension, either before the board of education or, if indicated in such request or if designated by the board before an impartial hearing panel. The impartial hearing panel shall consist of three members appointed as follows: The board of education shall appoint one panel member, the teacher shall appoint one panel member, and those two panel members shall choose a third, who shall serve as chairperson. Within fifteen days after the close of the hearing before an impartial hearing panel, unless the parties mutually agree to an extension, such panel shall submit in writing its findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher. The board of education shall give the teacher concerned its written decision within fifteen days of receipt of the written recommendation of the impartial hearing panel. Each party shall pay the fee of the panel member selected by it and shall share equally the fee of the third panel member and all other costs incidental to the panel's hearing. If the hearing is before the board of education, the board shall render its decision within fifteen days after the close of such hearing, and shall send a copy of its decision to the teacher. Either hearing shall be public if the teacher so requests or the board so designates. The teacher concerned shall have the right to appear with counsel at either hearing, whether public or private. A copy of a transcript of the proceedings of either hearing shall be furnished by the board of education, upon written request by the teacher within fifteen days after the board's decision, provided the teacher shall assume the cost of any such copy. Nothing herein contained shall deprive a board of education of the power to suspend a teacher from duty immediately when serious misconduct is charged without prejudice to the rights of the teacher as otherwise provided in this section."

taken no further action concerning the individual plaintiffs' employment or positions. The union has filed ten grievances pursuant to the collective bargaining agreement in effect between the parties, but the record does not disclose the disposition of these complaints.

The threshold issue on this appeal is whether the trial court had jurisdiction to hear the plaintiffs' request for relief. The defendants moved to dismiss the complaint on the ground that the trial court lacked jurisdiction, arguing that the plaintiffs failed to exhaust the contractual remedies available to them under their collective bargaining agreement and that they failed to pursue the administrative remedies provided in General Statutes § 10-151 (d).[3] The trial court denied the motion, however, and reached the merits of the plaintiffs' claims.

The bargaining agreement between the board and the union in effect between July 1, 1983, and June 30, 1985, provided that an individual administrator may file a grievance when "(1) he has been treated unfairly or inequitably, or (2) there has been a violation, misinterpretation or misapplication of a specific provision(s) of [the] Agreement or of established policy or practice." The agreement delineates a formal three step procedure for filing a grievance: the matter is first brought to the superintendent for decision, then to the board as a whole, and finally to an arbitrator for a binding decision. By statute, the agreement is enforceable; General Statutes § 52-408; and one party may compel the other to proceed with arbitration by petitioning the

---

[3] The defendants challenged the complaint on a motion to dismiss. Although the claim that the plaintiffs failed to exhaust their administrative remedies goes to subject matter jurisdiction and is properly raised by such a motion under Practice Book § 143, the claim that the plaintiffs failed to pursue their contractual remedies is not purely a question of subject matter jurisdiction and may have been more properly challenged by a motion to strike under Practice Book § 152.

Superior Court pursuant to General Statutes § 52-410. After an award is rendered by an arbitrator, the parties may also apply to the Superior Court to vacate or confirm the award; General Statutes §§ 52-418 through 52-420; and may then appeal the Superior Court's decision. General Statutes § 52-423.

Under federal law, "it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement" before resorting to the courts. *Vaca* v. *Sipes,* 386 U.S. 171, 184, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967); *Republic Steel Corporation* v. *Maddox,* 379 U.S. 650, 652, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965). The United States Supreme Court, in establishing this rule, reasoned that Congress had "expressly approved contract grievance procedures as a preferred method for settling disputes . . . ." *Republic Steel Corporation* v. *Maddox,* supra, 653. Although federal precedent in this area is not controlling, we find it persuasive and adopt a similar standard for cases brought under our state's labor laws. See *Board of Education* v. *Connecticut State Board of Labor Relations,* 190 Conn. 235, 241, 460 A.2d 1255 (1983). Like Congress in passing the Labor Management Relations Act, the General Assembly in enacting the state Labor Relations Act, General Statutes §§ 31-101 through 31-111b, the Teacher Negotiation Act, General Statutes §§ 10-153a through 10-153n, and the arbitration statutes, General Statutes §§ 52-408 through 52-424, clearly intended that it is "not only permissible but desirable" for grievances between employees, including school administrators, and the employer, including the board of education, to be settled through contract grievance-arbitration procedures. *Norwalk Teachers' Assn.* v. *Board of Education,* 138 Conn. 269, 280, 83 A.2d 482 (1951); see also *Board of Education* v. *Connecticut State Board of Labor Relations,* supra (involving an unfair labor practice com-

mitted in the course of the grievance-arbitration proceedings). "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' *Teamsters Local* v. *Lucas Flour Co.*, 369 U.S. 95, 103 [82 S. Ct. 571, 7 L. Ed. 2d 593 (1962)]." *Republic Steel Corporation* v. *Maddox,* supra.

We conclude then that, as a matter of state law, parties to a collective bargaining agreement must attempt to exhaust the exclusive grievance and arbitration procedures established in their agreement before resorting to court. See *Cahill* v. *Board of Education,* 187 Conn. 94, 103–104, 444 A.2d 907 (1982); *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 328, 307 A.2d 155 (1972) (*Loiselle, J.,* concurring), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); *D'Agostino* v. *New Britain,* 7 Conn. App. 105, 109–10, 507 A.2d 1042 (1986); *Cislo* v. *Shelton,* 35 Conn. Sup. 645, 653, 405 A.2d 84 (1978). In this case the individual plaintiffs and their union brought suit seeking to enjoin the board from eliminating certain administrative positions and from dismissing ten individuals. The complaint alleged that the defendants acted unfairly, violated the parties' collective bargaining agreement, violated state statutory procedures, and violated the plaintiffs' constitutional rights to due process and equal protection. Despite the multiple allegations made, the complaint is not unlike those usually brought for employee grievances and essentially seeks relief for

harms occurring in the context of an employer-employee relationship. See *Cahill* v. *Board of Education,* 198 Conn. 229, 236–39, 502 A.2d 410 (1985). Given the broad wording of the grievance provisions of the collective bargaining agreement, we have no doubt that the relief requested in this case is within the scope of the contractual remedies available.[4] See *Legg, Mason & Co.* v. *MacKall & Coe, Inc.,* 351 F. Sup. 1367, 1370–71 (D.C. Cir. 1972) ("complaint sounding in tort will not in itself prevent arbitration if the underlying contract embraces the disputed matter"); *Merrick* v. *Writers Guild of America, West, Inc.,* 130 Cal. App. 3d 212, 219, 181 Cal. Rptr. 530 (1982). The plaintiffs therefore should have pursued their claims under the grievance-arbitration provisions of their collective bargaining agreement before seeking redress in state court.[5] The trial court was thus in error when it refused to dismiss the complaint for lack of jurisdiction.

[4] The plaintiffs claim that under the collective bargaining agreement in effect, the arbitrator is vested only with the power to construe specific provisions of the agreement and has no power to apply legal standards. They argue from this premise that arbitration would be an inadequate remedy. We cannot agree with the plaintiffs, however, that the arbitrator is so limited under the collective bargaining agreement. The only limitation on the arbitrator's authority is found in section nine of the grievance procedures which provides that "any arbitrator acting pursuant to this Agreement shall have power only to construe specific provisions of this Agreement and shall have no authority to add to, delete from or modify in any way any provision of this Agreement." This language can reasonably be read to limit just the arbitrator's powers to construe the agreement and does not necessarily mean that the arbitrator is powerless to apply legal principles. It is "presumed that the parties intended to grant to the arbitrators such powers as are reasonably necessary to settle the dispute fully." 5 Am. Jur. 2d, Arbitration and Award § 25. Thus, absent explicit language in the contract to the contrary or limiting language in the submission, it is presumed that the arbitrator in this case has the power fully to decide disputes involving "grievances" as defined by the agreement. See *Board of Police Commissioners* v. *Maher,* 171 Conn. 613, 628, 370 A.2d 1076 (1976); *Straus* v. *North Hollywood Hospital, Inc.,* 150 Cal. App. 2d 306, 310–11, 309 P.2d 541 (1957).

[5] The plaintiffs' action could be maintained if the agreement did not make the grievance-arbitration process the exclusive remedy for the parties. *Republic Steel Corporation* v. *Maddox,* 379 U.S. 650, 657–58, 85 S. Ct. 614,

We also note that the ten individual plaintiffs[6] whose contracts are being considered for termination have not exhausted the administrative remedies available to them under General Statutes § 10-151 (d). "We have frequently stated that '[w]hen an administrative remedy is provided by law, relief must be sought by exhausting this remedy before resort to the courts.' *McNish* v. *American Brass Co.,* 139 Conn. 44, 53, 89 A.2d 566 (1952), cert. denied, 344 U.S. 913, 73 S. Ct. 336, 97 L. Ed. 704 (1953); *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 684, 485 A.2d 1272 (1984); *Friedson* v. *Westport,* 181 Conn. 230, 232–33, 435 A.2d 17 (1980); *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979); *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 179, 377 A.2d 280 (1977)." *Sampietro* v. *Board of Fire Commissioners,* 200 Conn. 38, 42, 509 A.2d 28 (1986). Under § 10-151 (d) tenured teachers possess the right to have the school board's decision reviewed by an impartial panel before they can be dismissed. The ten individuals involved here requested such a hearing, but before such a hearing could be conducted, they filed the present action seeking equitable relief. On the facts, this case is virtually indistinguishable from the second termination attempt in *LaCroix* v. *Board of Education,* 199 Conn. 70, 82–87, 505 A.2d 1233 (1986). In *LaCroix* we held that the plaintiff's failure to pursue the school board's second termination action under the administrative procedures established in General Statutes

13 L. Ed. 2d 580 (1965). Although we are not provided on the record with the full agreement, there is no indication that the parties intended the procedures to be other than the exclusive remedy for the resolution of their disputes.

[6] The administrative remedy provided in General Statutes § 10-151 (d) does not apply to the remaining nine individual plaintiffs whose positions were being eliminated but whose employment with the board continued. *Candelori* v. *Board of Education,* 180 Conn. 66, 69, 428 A.2d 331 (1980); *Delagorges* v. *Board of Education,* 176 Conn. 630, 636–37, 410 A.2d 461 (1979).

§ 10-151 (d) prevented the Superior Court from acting on the matter. In this case, as in *LaCroix*, "[t]he plaintiff[s] deliberately decided not to avail [themselves] of these statutory means of redress. [Their] failure . . . to pursue [their] available remedies is thus fatal to [their] present cause of action." Id., 84.

The plaintiffs raise claims attacking the constitutionality of the procedure used by the board in considering the termination of the contracts and the elimination of the positions in question. We have recognized that in special circumstances, plaintiffs who challenge the constitutionality of an administrative procedure may be permitted to bring a collateral action without first exhausting their administrative remedies. Id., 79; *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 117, 425 A.2d 576 (1979). "[D]irect judicial adjudication even of constitutional claims [however,] is not warranted when the relief sought by a litigant 'might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore.' *Sullivan* v. *State,* [189 Conn. 550, 559, 457 A.2d 304 (1983)]." *LaCroix* v. *Board of Education,* supra, 87. Since the plaintiffs here could have obtained the relief sought by resorting either to the grievance procedures established by the collective bargaining agreement or to the administrative procedure of General Statutes § 10-151 (d), the trial court therefore did not have jurisdiction to consider even the plaintiffs' constitutional challenge.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the action for lack of jurisdiction.

In this opinion the other justices concurred.