[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On February 21, 1989, plaintiff-appellant, Kevin Gemmell filed this appeal to contest his termination by defendant-appellee, New Haven Board of Fire Commissioners. Defendants-appellees, the City of New Haven ("the City") and the New Haven Board of Fire Commissioners ("the Board") filed an answer on November 8, 1990. Appellant filed his brief on October 31, 1991, appellee City of New Haven filed its opposition on January 2, 1992 and a hearing was conducted before this court. In accordance with the court's directive, appellant filed a supplemental brief on May 4, 1992, appellee City of New Haven filed its reply memorandum on May 26, 1992, and the issues are now fully briefed.
The return of record establishes the facts hereinafter set forth.
Kevin Gemmell took the Firefighter III Civil Service examination on January 11, 1986 and February 8, 1986. Subsequently, he was placed on the Eligible List Roster, signifying his eligibility for the position of Substitute Firefighter for the City of New Haven. At the February 3, 1987 Board of Fire Commissioners' meeting, Gemmell was "assigned" from the Civil Service List to attend a ten-week training session at the firefighters' training academy. On March 27, 1987, he injured his ankle during a training class and was unable to complete the training session.
Gemmell underwent ankle surgery in June of 1987, and his treating physician indicated that he would be able to retake the firefighter's course in March. The Board decided to allow him to remain on light duty at the training school until January of 1988, when additional assignments to the department could be made.
At the February 2, 1988 meeting, the Board decided that Gemmell would participate in the March, 1988 training class, and his probationary period was extended for one year from the commencement date of the training class.
Gemmell proceeded with the March training session at the CT Page 6608 academy, but he encountered difficulties with some of the physical aspects to the training. He was reinjured on April 4, 1988, and his doctor determined that he was physically unable to proceed with the training program. The doctor observed that "because of the neurological findings, [Gemmell] should no longer be considered a candidate for the Fire Dept. unless, after neurological consultation, a reverse opinion is obtained." The doctor further noted that "[i]t is not felt that the ankle injury itself is the disabling feature of this patient's present problem." A consulting physician recommended that Gemmell continue to perform sedentary work for the fire department during "his period of evaluation."
Gemmell again underwent surgery during the summer of 1988. He began slowly increasing his activities, and he was eventually pronounced fit to return to light duty, subject to certain physical restrictions, beginning November 7, 1988.
The Board conducted a meeting on January 23, 1989 to determine Gemmell's status. At the meeting, the Chief summarized Gemmell's medical and working status from March 27, 1987, the date of his initial injury, and he noted that light duty was no longer available because of city-imposed financial constraints. The Chief observed that Gemmell was not a sworn member of the Department, and that he was now an "at will employee of the Department." After some discussion, the Board unanimously voted to terminate Gemmell, and on January 23, 1989, the Board notified Gemmell that it had voted to terminate his assignment to the Fire Training Academy.
Appellant argues that the Board's termination action is illegal because it violates the Board Rules, the New Haven Charter, the Civil Service Commission Rules, and the Agreement Between the City of New Haven and the International Association of Firefighters, AFL-CIO. In addition, he maintains that, as a permanent employee of the Department, he enjoyed a property right in his job, and the Board's termination action failed to comport with due process requirements.
Appellee City of New Haven contends that appellant was a probationary trainee of the fire department, and therefore he was not a permanent employee of the department. Appellee argues that appellant lacks standing to bring this appeal because he cannot establish the requisite aggrievement. In the alternative, appellee argues that even if appellant was a permanent member of the fire department, the appeal should be dismissed because appellant failed to exhaust the administrative remedies provided to firefighters under the Agreement Between the City of New Haven and the International Association of Firefighters, AFL-CIO. CT Page 6609
This appeal is not governed by the Uniform Administrative Procedure Act.
General Statutes 7-301 provides that a town "may provide by ordinance for the protection of property within its limits from fire and for the establishment of a town fire department, discipline and control thereof by . . . a board of fire commissioners . . . ." Pursuant to its Charter, New Haven has established a Board of Fire Commissioners, and 109 of the Charter provides that the Board shall promulgate all rules and regulations concerning departmental administration.
The Uniform Administrative Procedure Act, General Statutes4-166 et seq., does not govern this appeal because the Board of Fire Commissioners is a municipal entity, not a state agency. Section 4-166(1) defines "agency" as "each state board, commission, department or officer authorized by law to make regulations or to determine contested cases . . . ." (Emphasis added). The term "agency" in the Act refers to "a body in which the legislature has reposed general powers of administration of a particular state program in connection with which it has been given statutory authority to act for the state in the implementation of that program." Catholic Family Community Services v. CHRO, 3 Conn. App. 464, 467; see also Klug v. Inland Wetlands Comm'n. 19 Conn. App. 713 (plaintiff's appeal from decision of city's inland wetlands commission not governed by UAPA because commission was a local agency, not a state agency), cert. denied, 213 Conn. 803.
In this case the Agreement Between the City of New Haven and the International Association of Firefighters, AFL-CIO ("Agreement") effective July 1, 1987 — June 30, 1991, governs the dispute between the parties. Under said agreement, which was in effect at the time of appellants' termination, a probationary employee has recourse to the grievance procedure. Upon this record, appellant was a member of the union on the date of termination; he paid union dues, he was listed in the union roster and he was issued a union card; and he has recourse to the grievance procedure as a probationary employee in accordance with the specific provisions of the agreement.
Appellant must exhaust applicable administrative remedies before this court can have jurisdiction over the dispute between the parties.
The exhaustion doctrine is "`grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions.'" Pet v. Dep't of Health Services, 207 Conn. 346, 351. A party's failure to CT Page 6610 exhaust available grievance procedures deprives the court of subject matter jurisdiction and will result in the dismissal of the action. Kolenberg v. Bd. of Educ., 206 Conn. 113, 123, cert. denied, 487 U.S. 1236.
"[P]arties to a collective bargaining agreement must attempt to exhaust the exclusive grievance and arbitration procedures established in their agreement before resorting to court." School Administrators Ass'n v. Dow, 200 Conn. 376, 382. Permitting an individual to circumvent such established procedures would deprive the union and the employer of the "`ability to establish a uniform and exclusive method for orderly settlement of employee grievances.'" Id., 382. When a grievance procedure "cannot be made exclusive, it loses much of its desirability as a method of settlement,'" and "such a situation `would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.'" (Citations omitted.) Id. Parties must attempt to exhaust such procedures even before they pursue "alleged violations of . . . constitutional rights to due process and equal protection . . . ." Trigila v. Hartford, 217 Conn. 490, 494.
Appellant argues that he has not failed to exhaust his administrative remedies because such remedies are not considered "`available' if the subject of the action is a matter excluded from collective bargaining." Appellant maintains that his appeal "is grounded in a dispute over his initial appointment to the position." Id. He contends that an appointment is a matter of civil service rules and law, and that General Statutes 7-474(gg) expressly excludes such matters from collective bargaining. Id.
Contrary to appellant's claims this appeal is not grounded in a dispute concerning appellant's appointment, because, appellant was never appointed to a permanent position within the fire department. Rather, this appeal is based upon appellant's termination as a probationary employee by the Board, a matter covered under the grievance procedure of the Agreement.
Article VI of the Agreement mandates a grievance procedure for disputes involving the "interpretation or application of any of the provisions of this Agreement or concerning wages, hours and conditions of employment which are provided for in this Agreement or in any statute, charter provision, ordinance, regulation or policy, or concerning any matter or condition arising out of the employer-employee relationship . . . ." Appellant's termination dispute falls within the ambit of the agreement's grievance procedure, and appellant is required to exhaust the remedies provided by the agreement.
Appellant was a probationary employee, and, as such, he is CT Page 6611 obliged to exhaust Step I through Step III of the agreement's grievance procedure prior to resorting to court.
The Charter, the Commission Rules, the Board Rules, and the agreement specify the manner in which appointments are made, and define "permanent employee," "probationary employee" and "probationary period."[1]
The Board Rules provide that an appointee must satisfactorily serve a twelve-month probationary period. However, following the satisfactory completion of this probationary period, a permanent appointment will be made only if such appointee passes a physical examination and completes the basic training course. Failure to comply with these requirements invalidates the appointment. The Commission Rules characterize a "probationary employee" as one who has not completed a trial service period. A "permanent employee" is defined as one who successfully completes the probationary period and who has been permanently appointed to a position by the appointing authority. The agreement emphasizes that a firefighter appointment is not considered permanent until the twelve-month probationary service period expires, and it empowers the Board to terminate an employee during the probationary period "if, during this [probationary] period upon observation and consideration of his performance of duty, they shall deem him unfit for such appointment."
In March of 1987, appellant was initially "assigned" to the firefighter Training Academy from the Eligible List Roster maintained by the Civil Service Commission, but he failed to complete the ten-week training session at that time. In February of 1988, appellant was notified that he was assigned to the training class of March, 1988, and that his probationary period would be extended for one year from the commencement date of the training class. He failed to complete the March, 1988 training course, and he was subsequently terminated on January 23, 1989.
Although appellant had been assigned to "light duty" at the training academy between March, 1987 and March, 1988, this was a temporary assignment pending his anticipated return to the academy. The "light duty" assignment cannot be construed as the satisfactory completion of a "probationary period," which the Commission Rules define as "[a] working test period during which an employee's skills, aptitudes and adjustments are appraised prior to his permanent appointment in that position;" and appellant could not be appointed as a permanent employee without the satisfactory completion of said probationary period.
Therefore, appellant did not qualify as a "permanent employee" under any of the applicable rules and regulations CT Page 6612 because his physical inability to complete the required training course precluded him from successfully completing the twelve-month probationary period.[2]
As a probationary employee, appellant is required to exhaust Steps I through III of the Grievance Procedure prior to initiating this appeal.
The collective bargaining agreement provides in pertinent part:
"ARTICLE XXIV — PROBATIONARY PERIOD
 24.1 To enable the Board of Five Commissioners to exercise sound discretion in the filling of positions within the Fire Department, no appointment to the position of firefighter in the Fire Department shall be deemed final and permanent until after the expiration of a period of twelve (12) months probationary service. During the probationary period of any employee, the Board of Fire Commissioners may terminate the employment of such employee if, during this period upon observation and consideration of his performance of duty and adherence to the Rules and Regulations of the Department of Fire Service, they shall deem him unfit for such appointment. Nothing contained herein shall be used to deny any employee of any rights or any benefits to which he may be entitled under this Agreement or under the pension provisions of the City Charter covering employees of the Fire Department, except that probationary employees shall have recourse to the Grievance Procedure under Article VI up through and including Step III of the Grievance Procedure."
Agreement, effective July 1, 1987 — June 20, 1991, (Emphasis added).
The grievance procedure mandated by Article VI provides in relevant part:
 "6.1 In the event that any dispute arises between the City and the Union or any employee concerning the interpretation or application of any of the provisions of this Agreement or concerning wages, hours and CT Page 6613 conditions of employment which are provided for in this Agreement or in any statute, charter provision, ordinance, regulation or policy, or concerning any matter or condition arising out of the employer-employee relationship, such difference or dispute shall be deemed a grievance and shall be settled in accordance with procedures set forth herein."
Agreement, effective July 1, 1987 — June 30, 1991.
Step I of the grievance procedure provides that the Union shall submit a written grievance to the Chief within ten days of the event that gave rise to the grievance. Within five days of the submission, the Chief must meet with the grievant and a union representative to seek a resolution of the grievance. If the grievance is not resolved to the satisfaction of the grievant and the Union, Step II provides that the Board shall meet with the grievant and the Union representative. If a satisfactory resolution is not effected at this point, Step III authorizes the grievant and the union representative to meet with the Director of Labor Relations.
There is no indication in the record that appellant filed a grievance with the Chief, the Board, or the Director of Labor Relations, nor does appellant allege that he filed any such grievance.
Accordingly, appellant having failed to exhaust his administrative remedies under the agreement, this appeal is dismissed because this court lacks subject matter jurisdiction.
Ronald J. Fracasse, Judge