[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs brought this action in four counts. They have withdrawn the first count and on December 2, 1993 filed an amended complaint of three counts. Defendants move to dismiss. The plaintiffs are the Hartford Police Union (Union), Michael Whalen (Whalen) and Jorge Resto CT Page 11202 (Resto). Both the individual plaintiffs are members of the Union.
The defendants are the City of Hartford (City) and the Police Civilian Review Board (Board).
Allegations of the Amended Complaint
In their present first count the plaintiffs allege that the Board was "established by ordinance of the City and consist[s] of seven members. Five are civilian residents of the City and two are members of the Hartford Police Department (Department) holding the rank of captain or above, plus two alternate members. CITY . . . is a municipal corporation . . . .
[T]he Board held its first meeting [in public] . . . on April 27, 1993, and has convened [in public] for the intended purpose of conducting a hearing each month thereafter and intends to continue to [so] conduct hearings . . . .
[T]he BOARD has demanded and achieved release to members of the public, records of the Internal Affairs Division which constitute:
 a. Personnel and similar files the disclosure of which would constitute an invasion of personal privacy of Hartford police officers;
 b. Records of law enforcement agencies not otherwise available to the public which records sometimes are compiled in connection with the detection or investigation of a crime where the disclosure of such records would not be in the public interest;
 c. Uncorroborated allegations subject to destruction pursuant to Conn. Gen. Stat. Sec. 1-20c.
[Such] disclosure is in violation of Conn. Gen. Stat. Sec. 1-19 and 1-20a.
In requesting [such] release . . . the BOARD is seeking to release records of arrest beyond the scope permitted by CT Page 11203 Conn. Gen. Stat. Sec. 1-20b, the Superior Court rules regarding disclosure in criminal cases and Conn. Gen. Stat. Sec. 54-142a.
The BOARD has and intends in the future to openly discuss the contents of the aforementioned records and similar files in public session together with the presence of the media which in turn publishes the accusations contained in said documents.
The plaintiffs and members of the plaintiff UNION will suffer irreparable injury by the release of the aforementioned documentation and . . . discussion of same in open and public forum in that:
 a. The officers will be subject to embarassment [sic] and humiliation as a consequence of the potentially serious allegations, including, but not limited to, breach of criminal statutes, excessive use of force, abuse of public office, theft, etc., particularly where said allegations are completely unfounded and scurrilous;
 b. The officers will be subject to invasion of personal privacy;
 c. The foregoing information is published while at the same time the officer is deprived of the opportunity to cross-examination [sic] his accuser;
 d. The morale and effectiveness of the Hartford police officers will be significantly undermined;
There is no adequate remedy at law." (Paragraph numbers omitted)
In their second count they allege all in the first count and also say that "[u]nder the terms of the Charter of the City of Hartford:
a. . . . Article X, Sec. 2, the Chief of the . . . Department has the exclusive authority and direct command of the police officers, including creation of the rules and regulations, assurance of efficiency, discipline and good CT Page 11204 conduct of the employees, and [is] charges [sic] with the responsibility for discipline; and
 b. Under Article III, Sec. 17, the Court of Common Council of the City of Hartford, or a committee thereof is vested with the exclusive power to conduct an investigation, including hearings, into the alleged misconduct of the employees of the CITY.
In creating the BOARD, the CITY has violated the aforementioned provisions of the . . . Charter in that:
 a. The Chief of Police has been directed by the ordinance creating the BOARD, to take action within seven (7) days of the recommendation of the BOARD, report the action or inaction taken in regard to the allegation acted upon by the BOARD to the BOARD and if a chief of police does not follow the recommendation of the BOARD, he is to account to [sic] his reasons for failing to follow the BOARD's action; and
 b. The BOARD is empowered to conduct an investigation into all citizen complaints against police officers, including review of all documentation, hearing of witnesses in open forum, cross-examination of witnesses by members of the BOARD only, directing investigation into allegations by a special investigator created and assigned to the BOARD, and otherwise investigating cases of alleged misconduct of police officers.
. . . [Those] violations of the Charter will cause irreparable injury to the members of this bargaining unit in that:
 a. It will undermine the morale and effectiveness of the members in performing their duties given the obvious accountability of the Chief of Police to a body outside the . . . Department in regard to matters of discipline and conduct;
 b. It will subject the members of the bargaining unit to unnecessary embarassment [sic], humiliation and CT Page 11205 invasion of privacy by virtue of the investigation and open hearing conducted by the BOARD;
 c. It will endanger the police officers and the public by creating a chilling effect on the police officers' willingness to react in a timely or appropriately forceful manner in dangerous situations for fear for [sic] loss of employment or other disciplinary action at the hands of the BOARD;
 d. It will subject members of the bargaining unit to inappropriate and excessive discipline.
There is no adequate remedy at law."
In the third count, the plaintiffs restate all of the allegations of the second count and also say that "implementation of the BOARD is in violation of the due process clause [sic] of the United States and Connecticut Constitutions, in that:
 a. Said hearing does not provide the members of the bargaining unit with a fair hearing, meeting the due process standard of said Constitutions;
 b. The bias of the BOARD members against police officers will deprive the members of the bargaining unit of their constitutional right to be heard by an impartial tribunal.
. . . [Such] deprivation . . . will cause the members of the bargaining unit irreparable injury, in that:
 a. Disciplinary action based upon the recommendation of the BOARD as a consequence of the hearing conducted by that body will be imposed upon the members of the bargaining unit, thus subjecting them to embarassment [sic], humiliation and deprivation of property interest without due process of law;
 b. The bias of the BOARD members against police officers will deprive the members of the bargaining unit of their constitutional right CT Page 11206 to be heard by an impartial tribunal;
 c. It will endanger the police officers and the public by creating a chilling effect on the police officers' willingness to react in a timely or appropriately forceful manner in dangerous situations for fear of loss of employment or other disciplinary action at the hands of the BOARD.
There is no adequate remedy at law."
The complaint does not complain about disclosure of records of arrest of or criminal prosecution of police officers.
Allegations of the SBLR Amended Complaint
 "On August 20, 1993 the Hartford Police Union (Union) filed with the Connecticut State Board of Labor Relations (the Labor Board) an amended complaint alleging that the City of Hartford (the City) had engaged and was engaging in prohibited practices within the meaning of Section 7-470 of the Municipal Employee Relations Act (the Act). Also, on August 20, 1993, the Union filed a request for Interim Relief pursuant to 7-471 (4)(E) of the Act and 7-47-36 of the Regulations of Connecticut State Agencies. Specifically the Union in the amended complaint, alleges that the City by its unilateral implementation and operation of a Civilian Review Board violates the Act in that:
 (a) Said action was taken without negotiations with the Union;
 (b) Police officers are directed to appear before the Board, thus changing the hours, wages and conditions of employment of the members so ordered;
 (c) The inquiry and investigation into disciplinary matters are open to the public without the right of objection by members of the bargaining unit;
CT Page 11207
 (d) Personnel and similar files, the disclosure of which would constitute an invasion of personal property, have been threatened by the Board to be made available to members of the bargaining unit;
 (e) The Chief of Police has been directed to account to the Board in regard to the discipline which he does or does not impose in the face of the findings of the Board;
 (f) The Board intends to hire an investigator outside of the bargaining unit represented by the Union to perform investigative and other functions heretofore performed exclusively by members of the bargaining unit;
 (g) The City has ignored and abrogated the Collective Bargaining Agreement by removing the Chief of Police the exclusive authority for conducting investigations into complaints as provided in Appendix A, Paragraph 2 of the Collective Bargaining Agreement.
 (h) The unilateral implementation of the foregoing and refusal to bargain with The Union has undermined the authority of The Union as the exclusive bargaining agent of its members;
 (i) The Union is not permitted to speak for or effectively represent its members at Civilian Review Board hearings;
 (j) Members of the Collective Bargaining Unit are deprived of a fair hearing as a result of the bias of Board members and lack of due process of Civilian Review Board hearings such as the right to object to improper evidence or proceedings, the right to cross-examine witnesses, etc.
CT Page 11208
 (k) The Civilian Review Board members ignore and disregard members' rights under the Collective Bargaining Agreement."
In that complaint the Union contends that the continued operation of the Board undermines the Union's ability to fairly represent its members and that as a result there is a detrimental impact on the Union.
Facts
The Union alone filed a petition for injunctive relief with the Connecticut Department of Labor and a decision on an interim request on that petition has been received from the State Board of Labor Relations (SBLR). The court has that decision. It also has the collective bargaining agreement between the City and the Union; Hartford City Ordinance Section 2-196; Chapters III and X of the Hartford City Charter; video tapes of four Board hearings and various other materials.
Law
In order for this court to have jurisdiction, the plaintiffs must have exhausted their administrative remedies. Housing Authority v. Papandrea, 222 Conn. 414, Trigila v. Hartford, 217 Conn. 490, 493-494. Very specifically, "parties to a collective bargaining agreement must attempt to exhaust the exclusive grievance and arbitration procedures established in their agreement before resorting to court." School Administrators Assn. v. Dow, 200 Conn. 376, 385. In our case, only the Union has filed a petition with the SLRB [SBLR]. The Union is here attempting to exhaust its administrative remedies.
The Union seeks an injunction here. It may also receive an injunction from SLRB [SBLR] if it proves its case there. If each of those remedies will achieve the same result for the Union exhaustion is not complete and as to the Union the court has no jurisdiction.
In Trigila v. Hartford, supra, the plaintiff had both a possible contractual claim and a statutory claim against the defendant. The plaintiff recognized that on his contractual claim he had an effective administrative remedy CT Page 11209 under his contract, a collective bargaining agreement. However, he argued that he had a distinct statutory claim under C.G.S. 2-3a which was not expressly encompassed by the "contract" "[T]he legislature can confer upon an employee a substantive right independent of existing labor relations statute and administrative procedures associated therewith." id. 495.
The Trigila court divided the issue into "two analyltic [analytic] subparts. First, as a general matter do the parties to a collective bargaining agreement have the authority to include the resolution of questions of law relating to statutory construction and application within contractually determined grievance and arbitration procedures? Second, does the collective bargaining agreement in this case manifest the parties intention to confer such authority on the designated grievance and arbitration procedure?"
In our case, the statutes upon which the plaintiffs all depend are the "Freedom of Information Act" C.G.S.1-19, 1-20a, b and c, and the criminal records erasure statute, C.G.S. 54-142a. They also depend on the City's charter, Article X, Sec. 2, and Article III, Sec. 17. Finally they assert that they are entitled to protection under the due process clause of the United States and Connecticut" constitutions.[1]
A. Statutes — Charter
1. F.O.I.
Conn. Gen. Stats. 1-19 sets forth in some detail what public records may and may not be disclosed and how access may be obtained to them. The plaintiffs complain that the release of IAD files is a release of "[p]ersonel [sic] and similar files"[2] and thus an invasion of the individual's personal privacy under subsection (b). That Statute permits disclosure and then limits the disclosure in its subsection (b) saying that, "Nothing in sections 1-15,1-18a, 1-19a to 19-b inclusive and 1-21 to 1-21k inclusive shall be construed to require disclosure" of a variety of materials, including "(2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." This statute on its face CT Page 11210 does not forbid disclosure of such files but only says their disclosure is not required.
When we come to C.G.S. 1-21a(a) we find that the contract is a public record under C.G.S. 1-19. We also find in 1-20a(b) that when the City receives a request for a record in an employee's personnel or medical files and similar files and the City reasonably believes that the disclosure of such records would legally constitute an invasion of privacy the City shall take certain affirmative seeps but if it does not so believe it need not withhold. The complaint does not allege that the City either did not or could not believe such disclosure would not constitute an invasion of privacy.
Conn. Gen. Stats. 1-20b provides that records of arrests are public records and 1-20c provides for destruction of records "consisting of uncorroborated allegations" of criminal activity within a year and ninety days after their creation if the allegations are not corroborated.
None of the claimed violations of these four freedom of information statutes as pled permit plaintiffs to complain about any disclosure.
2. Erasure
Conn. Gen. Stats. 4-142a provides the rules for erasure of criminal records. The obvious purpose of the rules is to eliminate a permanent record of an accusation of crime made against a person who is found not guilty or against whom the charge is dismissed. For the same reason it also orders the records erased if a matter has been nolled after a time period.
The arrested person has a legal interest in the protection afforded by that statute as does the office of the clerk of the court, and the state's or prosecuting attorney's office. But police officers have no such interest. Thus, they have no standing. "Standing is the legal right to set the judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action or a legal or CT Page 11211 equitable right, title or interest in the subject matter of the controversy." Hiland v. Ives, 28 Conn. Sup. 243, 245, Ardmore Construction Co. v. Freedman, 191 Conn. 497, 501.
It is a well established principle of standing that one party cannot rely on a possible violation of another's rights. State v. Williams, 206 Conn. 203, 211.
3. Constitutional Claims
The rule requiring exhaustion of administrative remedies cannot be avoided by claims of constitutional violations. Doe v. Heintz, 209 Conn. 17, 34. In addition, the Union asserts no legal constitutional claim here. No plaintiff may "assert constitutional claims of others not in direct adversarial posture before the court." Superintendent of Police v. Freedom of Information Commission, 222 Conn. 621, 630.
Article II 2.1 of the Contract, in pertinent part, provides as follows: "Any grievance or dispute which may arise between the parties concerning the application, meaning or interpretation of this Agreement, shall be settled in the following manner:" There follows a description of the system of presenting grievances and their resolution. For the court, the questions are, (1) Are all of the claims of the three counts and the relief sought grievable under Article II?, and (2) does that article provide the exclusive remedy for seeking such relief?
The first count alleges that actions are an invasion of privacy. Whether or not that invasion is grievable "shall be settled" under Article II.
The second count alleges that plaintiffs' morale and effectiveness will be undermined; the Union members will be embarrassed and subject to an invasion of privacy; defendants' actions create a chilling effect on police officers reaction times when in danger, and subject them to inappropriate and excessive discipline. All that "shall be settled" under Article II.
The third count alleges that because of defendants, actions the Union members will be disciplined and subject CT Page 11212 to embarrassment. That too shall be settled under Article II.
In addition, they allege that they will be deprived of "property interest" without due process and of their right to be heard by an impartial tribunal. This court reads Article II as being intended to allow grievances "on questions of wages, hours and other conditions of employment" per Appendix A of the Contract. It is also clear from that appendix, section (B), that the parties to the Contract have bargained as to "[a]ny formal written complaint by a person against a Police Officer." From this the court concludes that even the violation of the officers' rights in regard to any "property interest" or hearings are grievable exclusively under Article II.
Because the court has, for the purposes of the motion for a temporary injunction, heard all the evidence and to try to avoid a retrial of this preliminary matter the court finds that plaintiffs have proven irreparable injury.[3]
However, they have not proven that they have no adequate remedy at law. School Administration Ass'n v. Dow, supra 382. Even if they had, this court would not on balancing the equities grant the temporary injunction. Finally, the court does not believe plaintiffs would prevail upon the final hearing.
Motion to dismiss is granted.
N. O'Neill, J.