MICHAEL SACCARDI *v.* BOARD OF EDUCATION OF THE CITY OF STAMFORD ET AL.
(AC 15790)

Foti, Schaller and Spear, Js.

Argued April 28—officially released July 15, 1997

*Saul A. Rothman,* for the appellant (plaintiff).

*Charles L. Howard,* with whom were *Sheila A. Huddleston* and, on the brief, *Kimberly A. Mango,* for the appellees (defendants).

*Opinion*

SPEAR, J. The plaintiff, a former high school basketball coach, appeals from the judgment of the trial court dismissing his complaint for lack of subject matter jurisdiction. The principal issue is whether the trial court had jurisdiction to decide the plaintiff's claim that the defendant board of education's (board) refusal to hire him as a coach violated an agreement between the plaintiff and the board not to discipline him further for

earlier alleged recruiting violations. The resolution of that issue turns on whether the plaintiff was required to utilize all of the remedies available to him pursuant to a collective bargaining agreement before resorting to court proceedings.

The plaintiff asserts that the trial court had subject matter jurisdiction because his claims are based on an independent separate agreement between him and the board that was beyond the purview of the collective bargaining agreement. In the alternative, the plaintiff claims that the court had jurisdiction because (1) the collective bargaining agreement does not state that the remedies thereunder are exclusive and (2) he should be deemed to have exhausted the remedies of the collective bargaining agreement because the final step of nonbinding arbitration would have been futile and such final step could be taken only by the union and it refused to do so. We conclude that the trial court did not have subject matter jurisdiction and affirm the judgment dismissing the action.

The following factual and procedural history is gleaned from the record. The plaintiff is a teacher in the Stamford public school system and is a member of the Stamford Education Association, the collective bargaining agent for teachers in the Stamford public school system. In 1989, the Connecticut Interscholastic Athletic Conference, Inc., fined the Stamford school system and placed its athletic program on three years probation as a result of the determination by the conference that the plaintiff had violated recruiting and other conference rules.

The plaintiff entered into a settlement agreement with the board dated December 22, 1989, whereby the plaintiff, although admitting to no violations, agreed to pay $500 of the conference fine and to serve out the remain-

der of his then coaching assignment on probation. The plaintiff also agreed to reimburse Westhill High School $235 for certain expenditures made for the participation of his team or certain team members in the summer league. In return, the board promised that it would not otherwise discipline him.

The plaintiff applied for various coaching and assistant coaching positions between 1991 and 1994. He was unsuccessful in obtaining any of the positions and filed an action in the Superior Court, claiming that the board's refusal to hire him constituted discipline in violation of the December, 1989 agreement. The plaintiff initially sought a temporary injunction to enforce the terms of the agreement and also sought money damages. The application for a temporary injunction was denied and, thereafter, the board filed a motion to dismiss the plaintiff's action for lack of subject matter jurisdiction because this dispute was subject to the grievance procedures of the collective bargaining agreement. The trial court granted the motion to dismiss and this appeal followed.

I

The plaintiff claims that the December, 1989 agreement furnishes an independent basis for his action because it is not part of the collective bargaining agreement. He claims that his rejection for each of the six coaching positions was based on the alleged earlier recruiting violations and thus constituted "further discipline" in breach of the December, 1989 agreement.[1]

"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee

[1] The plaintiff claims that the alleged recruiting violations were discussed with respect to three of the jobs that he sought. The plaintiff does not allege that the violations were brought up with respect to the other three jobs, but asserts that he was rejected for each position because of the alleged recruiting violations.

must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union. . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. . . . The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective [bargaining] agreements." (Citation omitted; internal quotation marks omitted.) *Hunt* v. *Prior*, 236 Conn. 421, 431–32, 673 A.2d 514 (1996).

In support of his claim, the plaintiff relies primarily on *Cahill* v. *Board of Education*, 187 Conn. 94, 444 A.2d 907 (1982). In *Cahill*, the Supreme Court rejected the board of education's contention that sovereign immunity bars a teacher's suit for breach of contract against a local board of education. Id., 102. The Supreme Court held that "[a] local board of education is bound by and may sue or be sued on contracts in the same manner as municipal corporations." Id. The Supreme Court also ruled that the plaintiff had not failed to exhaust her administrative remedies because her claim was based on an alleged breach of an agreement between the plaintiff and the board of education to return her to a position of " 'like nature, seniority, status and pay' " when she returned from her sabbatical leave. Id., 105. The collec-

tive bargaining agreement did not provide for the kind of transfer about which the plaintiff complained. The court stated that "[a]lthough the agreement specifically provided that changes in assignment 'within a building unit' were subject to appeal through the grievance procedure, no similar allowance was made for teacher transfers. Thus, the plaintiff's only remedy for contesting the defendant's decision to transfer her was the court process. The trial court properly assumed jurisdiction." Id., 104. *Cahill* is inapposite because, in the present case, the plaintiff's claims can be addressed through the grievance and arbitration procedures provided in the collective bargaining agreement. A May 14, 1991 memorandum of agreement, part of the collective bargaining agreement, specifically addresses the selection of coaches.[2]

In this case, the plaintiff is complaining about the collateral consequences of the settlement agreement.

---

[2] The plaintiff also relies on cases of *Snyder* v. *Board of Education*, Superior Court, judicial district of Waterbury, Docket No. 121828 (August 30, 1995) (*Sylvester, J.*) and *Sekor* v. *Board of Education*, Superior Court, judicial district of Danbury, Docket No. 311665 (July 12, 1995) (*Stodolink, J.*). Those cases do not support his position.

In *Snyder*, the plaintiff sought the enforcement of an agreement he claimed that he had with the mayor. The plaintiff claimed that pursuant to this agreement, the board of education could not initiate termination proceedings against him until certain criminal charges were resolved. The trial court ruled that the plaintiff was not required to exhaust administrative remedies because the proceeding was not one that challenged his termination and thus not subject to the doctrine of exhaustion of administrative remedies. Unlike *Snyder*, the plaintiff here challenges the board's actions with respect to hiring, a subject clearly covered by the collective bargaining agreement.

In *Sekor*, the plaintiff sought damages claiming that the defendant school board violated her free speech rights and thus violated General Statutes § 31-51q. The trial court in *Sekor* simply decided that, based on the pleadings and affidavits, there was a genuine issue of material fact as to whether, pursuant to § 31-51q, "the plaintiff's activities 'substantially or materially' interfered with her job performance or with the working relationship between the plaintiff and the defendant . . . ." *Sekor* v. *Board of Education*, supra. The plaintiff here alleges no such statutory violation.

There is nothing in the settlement agreement between the plaintiff and the board that precludes consideration of the allegations, as well as the rest of the plaintiff's employment history, in the event the plaintiff applies for coaching positions.[3] Nor is there anything in the agreement that provides that the plaintiff's personnel file was to be purged of any reference to the alleged violations.

The plaintiff seeks to place his claims outside the purview of the collective bargaining agreement simply by labeling the acts of the board and the other defendants[4] as disciplinary and thus in violation of the December 1989 agreement. This court has stated that "[t]he plaintiff may not choose [his] administrative remedy through the framing of [his] own complaint. If that were possible, the purpose of the exhaustion doctrine would be thwarted." *Savoy Laundry, Inc.* v. *Stratford*, 32 Conn. App. 636, 642, 630 A.2d 159, cert. denied, 227 Conn. 931, 632 A.2d 704 (1993).

The gravamen of the plaintiff's complaint is that he was the most qualified candidate for each job, but was not selected in violation of the memorandum of agreement as to the selection of coaches. This is precisely the kind of complaint that the collective bargaining agreement grievance procedures were designed to handle.

## II

The plaintiff makes three alternative claims in the event that we are unpersuaded by his first claim. He

---

[3] The record of the plaintiff's 1991 grievance with respect to the head basketball coaching position at Westhill High School reflects that "at the hearing the parties *agreed* that the superintendent may consider *all* relevant information in making appointments from among unit members." (Emphasis added.) The plaintiff does not dispute that there was such an agreement.

[4] The Stamford superintendent of schools and the principals of the two Stamford high schools were also named as defendants.

contends that (1) the collective bargaining agreement does not provide for exclusive remedies, (2) the final step in the collective bargaining agreement procedures would have been futile and (3) in any event, the union refuses to take the final step of nonbinding arbitration.

## A

The plaintiff asserts that "where the collective bargaining agreement does not provide that it is the exclusive remedy then the exhaustion doctrine does not apply." He relies on *School Administrators Assn.* v. *Dow*, 200 Conn. 376, 511 A.2d 1012 (1986), in support of this proposition.[5]

In *Dow*, the individual plaintiffs and their union brought suit to enjoin the board from eliminating certain administrative positions and from dismissing ten individuals. Our Supreme Court stated that "[t]he complaint alleged that the defendants acted unfairly, violated the parties' collective bargaining agreement, violated state statutory procedures, and violated the plaintiffs' constitutional rights to due process and equal protection. Despite the multiple allegations made, the complaint is not unlike those usually brought for employee grievances and essentially seeks relief for harms occurring in the context of an employer-employee relationship. . . . Given the broad wording of the grievance provisions of the collective bargaining agreement, we have no doubt that the relief requested in this case is within the scope of the contractual remedies available. . . . The plaintiffs therefore should have pursued their claims under the grievance-arbitration provisions of

---

[5] The plaintiff also cites *Drahan* v. *Regional School District*, Superior Court, judicial district of New London at New London, Docket No. CV-92-0523352 (June 22, 1995) (*Hurley, J.*). We affirmed the trial court's decision in *Drahan* v. *Board of Education*, 42 Conn. App. 480, 680 A.2d 316 (1996). Nowhere in the copy of the trial court's decision provided to us by the plaintiff or in our holding do we find the asserted proposition mentioned and we find no language that would support such a proposition.

their collective bargaining agreement before seeking redress in state court." (Citations omitted.) Id., 382–83.

Although the principal holding of *Dow* militates against the plaintiff's assertions, he relies on footnote 5 of that opinion.[6] The language in footnote 5 of *Dow* is derived from *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650, 652, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965), which states that "federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." "The federal rule would not of course preclude [a] court suit if the parties to the collective bargaining agreement expressly agreed that arbitration was not the exclusive remedy." Id., 657–58.

The thrust of footnote 5 in *Dow* is that the collective bargaining agreement procedures are the exclusive remedy unless the parties expressly agree otherwise. The plaintiff attempts to invert this proposition to one in which the collective bargaining agreement is exclusive only if it expressly says so. The plaintiff misreads *Dow* and *Republic Steel Corp.* Those cases stand for the proposition that, where nothing is said in the collective bargaining agreement about exclusivity, the agreement is considered to be the exclusive remedy.

### B

The plaintiff maintains that resort to the grievance procedure would be futile because the final step in the grievance procedure is nonbinding arbitration and one

---

[6] "The plaintiffs' action could be maintained if the agreement did not make the grievance-arbitration process the exclusive remedy for the parties. *Republic Steel Corporation* v. *Maddox*, 379 U.S. 650, 657–58, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965). Although we are not provided on the record with the full agreement, there is no indication that the parties intended the procedures to be other than the exclusive remedy for the resolution of their disputes." *School Administrators Assn.* v. *Dow*, supra, 200 Conn. 383–84 n.5.

of the parties will always resort to a court action. The plaintiff relies on *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 429, 655 A.2d 1121 (1995), where our Supreme Court stated: "It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings."

One can only speculate as to whether arbitration here would have resulted in a decision unfavorable to the plaintiff. We certainly cannot say that he could not obtain a favorable decision. In *Housing Authority* v. *Papandrea*, 222 Conn. 414, 432, 610 A.2d 637 (1992), our Supreme Court rejected the plaintiff's claim of futility because the grievance procedures were capable of providing the plaintiff with relief even though the commissioner of the department of housing had, in an advisory letter, already taken a position that was adverse to the plaintiff housing authority. The *Papandrea* court stated that "[t]he fact that the commissioner [had taken the adverse position in a letter] did not relieve the [housing authority] of its obligation to pursue its administrative remedies in an effort to persuade the commissioner that his position was legally incorrect." Id. The plaintiff here would not necessarily have been engaged in a futile action by pursuing the final step in the grievance process. He would have had an opportunity to convince an impartial arbitrator of the correctness of his position, and, if he had done so, the board might well have accepted that decision without seeking court review.

C

The plaintiff finally asserts that the final step of nonbinding arbitration could be taken only by the union and the union refused to do so. Consequently, he argues, he should be deemed to have exhausted the grievance procedures of the collective bargaining agreement.

The plaintiff requested the union to arbitrate only one of the matters of which he complains. Where the collective bargaining agreement permits only the union to take a grievance to arbitration, the employee has no further remedy unless he can prove that the union breached its duty of fair representation by acting arbitrarily, maliciously, or in bad faith. *Vaca* v. *Sipes*, 386 U.S. 171, 186, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967); see also *Tedesco* v. *Stamford*, 222 Conn. 233, 247–48, 610 A.2d 574 (1992). The plaintiff did not bring a claim against the union alleging a breach of its duty of fair representation as a result of the refusal of the union to pursue nonbinding arbitration in the one instance in which it was requested. As to the other instances, the plaintiff either did not request arbitration or did not even complete the first three levels of the grievance procedure. The trial court properly concluded that the plaintiff failed to exhaust his administrative remedies.

The judgment is affirmed.

In this opinion the other judges concurred.