[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs bring this action in twelve counts. The first count sets forth the parties. The plaintiffs are Martin J. Hankard, Steven J. Kulikowski and Gregory J. Soderburg, sergeants of the Avon Police Department. (Count one, ¶ 1.) The defendants are the Town of Avon; the town manager, Philip K. Schenck; the assistant town attorney, Joseph Landers; the chief of police, James A. Martino, Jr.; and members of the town council, Richard W. Hines, Joseph C. Woodford, William J. Shea, II, S. Edward Jeter, and Diane Hornaday. (Count one, ¶¶ 2-10.)
The second count contains general allegations set forth in forty-five numbered paragraphs. These general allegations are then incorporated as paragraphs one through forty-five of each of the remaining counts, counts three through twelve, which set forth the specific causes of action.
Count two alleges that on or about April 12, 1994, the plaintiffs were directed by the defendant, Avon Police Chief James A. Martino, Jr., to convene an Administrative Review Board to investigate allegations of racially discriminatory conduct committed by Avon Sergeants Thomas Transue and Steven Howe. (Count two, ¶ 11.) The plaintiffs commenced an investigation, during which both Transue and Howe refused to and recommendations included in their original report. (Count two, ¶ 28.)
On or about November 11, 1994, the defendants Martino and Joseph Landers met with the plaintiffs and "attempted to solicit, coerce, and then threaten [the] plaintiffs into destroying their November 9, 1994 memorandum in return for the destruction of [Martino's] October 20, 1994 memorandum." (Count two, ¶ 29.) The plaintiffs refused. (Count two, ¶ 29.) Landers ordered the plaintiffs to submit another report. (Count two, ¶ 31.) CT Page 7913 For approximately two hours, Landers and Martino "harassed, intimidated and coerced" the plaintiffs regarding their original report, intimating the result that the defendants wanted in a new report. (Count two, ¶ 31.) Landers told the plaintiffs that they had to include in the report what the defendants told them to include, stating that the plaintiffs' refusal "to consider what you have been ordered to consider . . . is obviously insubordination. [and y]our refusal to take our guidance and go with it is a mistake on your part." (Count two, ¶ 32.)
Because of the defendants' "intimidation, threats of discipline, anticipated disciplinary action for insubordination and attempts to engage [the] plaintiffs in a conspiracy to destroy part of the record," the plaintiffs refused to abide by any further direction from the defendants regarding the Board's investigation. (Count two, ¶ 33.) Instead, the plaintiffs reported the aforementioned events to the United States Attorneys Office and delivered, through respond to specific questions from the Board. (Count two, ¶ 16.) The defendants refused to compel Transue and Howe to answer the Board's questions. (Count two, ¶ 20.)
The plaintiffs submitted their completed report to the defendants on or about September 14, 1994. (Count two, ¶¶ 15-17.) The report concluded that some of the allegations against Transue and Howe were substantiated. (Count two, ¶¶ 19-24.)
On or about October 7, 1994, the defendant Martino directed a memorandum to the plaintiffs resubmitting their report to them with directions as to how the report was to be "more properly completed." (Count two, ¶ 25.) The memorandum indicated that the failure to compel Transue and Howe to respond to questions from the plaintiffs rendered the report incomplete. (Count two, ¶ 26.) On or about October 20, 1994, the defendant Martino directed a memorandum to the plaintiffs stating that certain additional questions by the Board to be posed to Transue and Howe were not permitted to be asked on the ground that such questions were irrelevant. (Count two, ¶ 27.)
The plaintiffs responded by memorandum on or about November 9, 1994, setting forth the history of their investigation, the interference with their inquiry, the completeness and advisory nature of their report, and that the plaintiffs were no longer in control of the investigation. (Count two, ¶ 28.) The plaintiffs declined to submit a supplemental report, stating that CT Page 7914 they stood by the findings counsel, their original report to the town's attorney. (Count two, ¶ 33.)
On November 16, 1994, the plaintiffs' counsel corresponded with the defendants, alleging a violation of the plaintiffs' free speech rights and right "not to speak what the government demands." (Count two, ¶ 34.) The defendants responded by memorandum on November 17, 1994, stating that "any insubordination by the members of the [Board] (by that I mean a refusal to obey my direct orders) would be unfortunate and would have to be dealt with in accordance with Avon Police Department policy and precedures." (Count two, ¶ 34.) On November 18, 1994, Landers informed the plaintiffs' counsel that-the plaintiffs' "jobs were on the line" if they did not submit another report. (Count two, ¶ 35.)
The plaintiffs allege that the defendants conspired to violate the plaintiffs' state constitutional civil rights by threatening disciplinary action in retaliation for the plaintiffs' exercise of their free speech right in connection with their investigation of allegations of racial discrimination in the Avon Police Department. (Count two, ¶ 37.) The plaintiffs further allege that the defendants acted in "[un]lawful, reckless, and deliberate disregard of the civil rights and liberties of [the] plaintiffs provided under the Connecticut Constitution." (Count two, ¶¶ 39, 41.) The plaintiffs further allege that the defendants acted with "personal malice" against the plaintiffs and were motivated by their "desire to stifle the investigation of racial discrimination . . . being conducted by [the] plaintiffs." (Count two, ¶ 42.)
As a result of the defendants' foregoing conduct, the plaintiffs allege that they have suffered loss of self esteem, reputational damage, public humiliation and severe mental and emotional harm and distress. (Count two, ¶ 44.) The plaintiffs also allege personal injuries including headaches, nausea, hypertension, stomach aches, loss of appetite, insomnia and anxiety. (Count two, ¶ 45.)
The plaintiffs bring causes of action for: defamation against the individual defendants Hines, Woodford, Shea, Jeter and Hornaday (count three); false light invasion of privacy against the individual defendants Hines, Woodford, Shea, Jeter and Hornaday (count four); negligent infliction of emotional distress CT Page 7915 against the individual defendants (count five); intentional infliction of emotional distress against the individual defendants (count six); violation of General Statutes § 31-5m, the "whistleblower" statute against all defendants (count seven); violation of General Statutes § 31-51q against all defendants (count eight); negligence against the Town of Avon pursuant to General Statutes § 52-557n (count nine); common law vicarious liability (respondeat superior) against the Town of Avon (count ten); indemnification from the Town of Avon pursuant to General Statutes § 7-465 (count eleven); and violations of rights secured by the Connecticut Constitution against all defendants (count twelve).
Presently before the court is the defendants' motion to strike the plaintiffs' second amended complaint. The motion to strike is directed against counts three through twelve. The plaintiffs have filed an objection to the motion to strike.
 DISCUSSION
A motion to strike contests the legal sufficiency of the allegations of the complaint to state a claim upon which relief can be granted. See Practice Book § 10-39(a)(1); Ferrymanv. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989) Mingachos v.CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) NovametrixMedical Systems, Inc. v. DOC Group, Inc., 224 Conn. 210, 214-15,618 A.2d 25 (1992). Further, the trial court "must construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Parsons v.United Technologies Corp. , 243 Conn. 66, 68, 700 A.2d 655 (1997). A motion to strike admits all facts well-pleaded; see Mingachosv. CBS, Inc., supra, 108; however, mere conclusions unsupported by the facts alleged are insufficient to survive a motion to strike; see Novametrix Medical Systems, Inc. v. BOC Group, Inc., supra, 215. "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 271, 709 A.2d 558 (1998).
 A. Count Three
The third count, defamation, is directed against the defendants Hines, Woodford, Shea, Jeter and Hornaday.[1] The CT Page 7916 plaintiffs allege that the "memoranda by Chief Martino dated October 7, and 20, 1994, and November 17, 1994 which stated that the [p]laintiffs' `report was incomplete, inconclusive and unclear,'" were defamatory in nature. (Count three, ¶ 46.) The plaintiffs claim general damages. (Count three, ¶ 47.) The defendants move to strike count three on the grounds that (1) the alleged defamatory statement is not libelous per se as a matter of law, and (2) the plaintiffs fail to allege publication to a third party.
"Libel per se . . . is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages." Battista v. United IlluminatingCo., 10 Conn. App. 486, 491-92, 523 A.2d 1356, cert. denied,204 Conn. 802, 803, 525 A.2d 1352 (1987). "Once the plaintiff has established that the words are false and actionable per se, . . . [the plaintiff] is entitled under Connecticut law to recover general damages without proof of special damages." Miles v.Perry, 11 Conn. App. 584, 602, 529 A.2d 199 (1987). "This is because the law presumes general damages where the defamatory statements are actionable per se." Id. "The individual plaintiff is entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the libel caused him." (Internal quotation marks omitted.) Battistav. United Illuminating Co., supra, 492. Whether a statement is libelous per se is a question of law for the court. Id.
"Whether a published article is libelous per se must be determined upon the face of the article itself. The statements contained therein, taking them in the sense in which common and reasonable minds would understand them, are determinative, and they may not for this purpose be varied or enlarged by innuendo. . . . Two of the general classes of libel which, it is generally recognized, are actionable per se are (1) libels charging crimes and (2) libels which injure a man in his profession and calling." (Citations omitted.) Proto v. BridgeportHerald Corp. , 136 Conn. 557, 565-66, 72 A.2d 820 (1950). The plaintiff claims that the communication in the present case is actionable per se because it charged that the "plaintiffs lacked skills and were incompetent in the performance of employment duties" and that the "plaintiffs had been neglectful and derelict in completing employment tasks." (plaintiffs' Brief, p. 6.) To fall within this category of libel per se, the defamatory statement must charge "improper conduct or lack of skill or integrity in one's profession or business and is of such a nature CT Page 7917 that it is calculated to cause injury to one in his profession or business." (Internal quotation marks omitted.) Miles v. Perry, supra, 11 Conn. App. 601.
The statement, "the [p]laintiffs' report was incomplete, inconclusive and unclear, "" taken on its face, does not charge the plaintiffs with improper conduct, a lack of skill, or a lack of integrity in their job performance. It is clear from the plain language of the statement that it was nothing more than the defendant Martino's evaluation concerning the contents of a report. To import from this statement that the defendant Martino was charging the plaintiffs with improper conduct, or a lack of skill or integrity, in the performance of their duties would be to materially vary and enlarge this statement by innuendo. This the court may not do. See Proto v. Bridgeport Herald Corp. , supra, 136 Conn. 565-66. Therefore the motion to strike count three is granted on the ground that the alleged statement does not constitute libel per se as a matter of law.
Alternatively, even if the statement were libelous per se, the third count is still insufficient to state a cause of action for defamation. "An essential element of a defamation claim is that the defamatory language be published to a third party." (Emphasis added.) Calderoni v. Bristol Savings Bank, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 459598 (August 19, 1994, Lavine, J.) The three memoranda alleged to contain the defamatory material are each alleged to have been directed by "the defendants through Martino . . . to the plaintiffs." (See, e.g., count two, ¶¶ 25, 27, 34.) There is nowhere an allegation that the statements were communicated to anyone other than the plaintiffs.[2] "In order to be defamatory a false statement must be communicated to some one other than the plaintiff." (Internal quotation marks omitted.) Bremseth v. Hartford Hospital, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 531168 (July 12, 1995, Wagner, J.). Therefore the third count is also stricken on the alternative ground that the plaintiffs fail to allege publication of the alleged defamatory statement to any third party.
 B. Count Four
The fourth count, invasion of privacy by false light, is directed against the defendants Hines, Woodford, Shea, Jeter and Hornaday.[3] The plaintiffs allege that "the aforementioned CT Page 7918 memoranda by Chief Martino dated October 7, and 20, 1994, and November 17, 1994, containing the false statements [that the plaintiffs' report] `is incomplete, inconclusive and unclear,' and `your consternation . . . is clearly unfounded, misplaced and unjustified,' were likely to cast all the plaintiffs in a false light . . . as confused, malicious and incompetent." (Count four, ¶ 46.) The defendants move to strike count four on the ground that the allegations are insufficient to support a cause of action for invasion of privacy by false light.
"Our Supreme Court has described the four types of invasion of privacy: `(1) appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness; (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie for defamation; and (4) publicity which places the plaintiff in a false light in the public eye.' Venturi v.Savitt, Inc., 191 Conn. 588, 591 n. 1, 468 A.2d 933 (1983)." Honanv. Dimyan, 52 Conn. App. 123, 132, ___ A.2d ___ (1999); Tarka v.Filipovic, 45 Conn. App. 46, 53, 694 A.2d 824, cert. denied,242 Conn. 903, 697 A.2d 363 (1997). "[Al false light invasion of privacy occurs if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. . . . This form of invasion of privacy protects one's interest in not being placed before the public in an objectionable false light or false position, or in other words, otherwise than as he is. . . . The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; . . . and (2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." (Citations omitted; internal quotation marks omitted.) Goodrich v. WaterburyRepublican-American, Inc., 188 Conn. 107, 131, 438 A.2d 1317
(1982).
In the opinion of the court the plaintiffs fail to allege sufficient facts to support of a claim for invasion of privacy by false light. There is no allegation that the defendants circulated or otherwise made known the contents of the memoranda to the general public. Moreover, the alleged objectionable statements on their face are completely unrelated to any attempt CT Page 7919 to represent the plaintiffs' character, history, activities or beliefs. Rather, as discussed in the previous section, it is clear from the plain language of the statements that they are nothing more than the defendant Martino's evaluation regarding the contents of a report. Therefore the defendants' motion to strike the fourth count is granted.
 C. Count Five
The fifth count, negligent infliction of emotional distress, is directed against all individual defendants. The defendants move to strike count five on the ground that "such a claim is only viable when premised upon additional allegations of unreasonable conduct by the defendants that are related to the termination process itself" and, here, the "plaintiffs do not and cannot claim they were terminated." (Defendants' Memorandum, p. 14.) The defendants cite Parsons v. United Technologies Corp. ,243 Conn. 66, 700 A.2d 655 (1997), in support of this proposition. Alternatively, the defendants move to strike count five on the ground that the plaintiffs fail to allege the requisite elements of a cause of action for negligent infliction of emotional distress.
Prior to July 1, 1993, an employee could not bring an action for negligent infliction of emotional distress against an employer for "on-the-job sufferings" since such were compensable under the Connecticut Workers' Compensation Act. See Malik v.Carrier Corp. , 986 F. Sup. 86, 92 (D. Conn. 1997). The Connecticut Appellate Court concluded, however, that the above rule did not apply in the context of an employment termination since a termination is not incidental to one's employment. See Fulco v.Norwich Roman Catholic Diocesan Corp. , 27 Conn. App. 800, 809,609 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404,627 A.2d 931 (1993). The court reasoned that termination is not something an employee regularly engages in within the period of employment and thus the exclusivity provisions of the Workers' Compensation Act did not apply. See id.
With the passage of Public Acts 1993, No. 93-228, § 1, the legislature excluded mental and emotional impairment from the definition of "personal injury" in the Workers' Compensation Act. See General Statutes § 31-275 (16), as amended by P.A. 93-228, § 1.[4] This amendment led some courts to conclude that "since the workers' compensation bar on common-law claims applies only to personal injuries, and since after July 1, 1993, CT Page 7920 emotional distress that does not arise from a physical injury or occupational disease is not a `physical injury,' it naturally follows that the Workers' Compensation Act does not bar negligent infliction of emotional distress claims incurred after July 1, 1993." Malik v. Carrier Corp. , supra, 986 F. Sup. 92 n. 6; see alsoLuth v. Wal-Mart Stores, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 358488 (August 18, 1995,Hartmere, J.). The legislative history of P.A. 93-228 also appears to indicate the legislature's intent to permit a direct cause of action for negligent infliction of emotional distress in the employment context after July 1, 1993.[5]
Notwithstanding the foregoing discussion, however, the Connecticut Supreme Court restated, notably subsequent to the1993 amendment, the previous rule that "negligent infliction of emotional distress in the employment context arises only where it is `based upon unreasonable conduct of the defendant in thetermination process.'" (Emphasis added.) Parsons v. UnitedTechnologies Corp. , supra, 243 Conn. 88, quoting Morris v.Hartford Courant Co., 200 Conn. 676, 682, 513 A.2d 66 (1986). While this statement appears at first blush to offer a definitive answer to the issue of whether a claim currently lies for negligent infliction of emotional distress in an employment action where no termination is alleged, the court believes that it should consider the context in which the Supreme Court made this statement. Parsons v. United Technologies Corp. , supra, involved an alleged wrongful termination. See id., 70. Thus, the court addressed the issue of whether the trial court properly struck the plaintiff's negligent infliction of emotional distress claim based on the circumstances of his termination. The court did not address the issue of whether a plaintiff may state a cause of action for negligent infliction of emotional distress absent an allegation of termination.
In addition, Parsons v. United Technologies Corp. , supra,243 Conn. 88, quoted Morris v. Hartford Courant Co., supra,200 Conn. 682, a case decided prior to the relevant 1993 amendment to the Workers' Compensation Act. Not only was Morris v. HartfordCourant Co., supra, also a wrongful termination case, but the statement quoted by Parsons v. United Technologies Corp. , supra, related to the court's discussion of why the trial court improperly struck the negligent infliction of emotional distress claim based solely on the striking of the wrongful termination claim — the statement was essentially dicta and in no way supports the conclusion that there exists no cause of action in CT Page 7921 Connecticut for negligent infliction of emotional distress in the employment context absent a claim or allegation of wrongful termination. In the court's opinion that the circumstances of the present case render Parsons v. United Technologies Corp. , supra, distinguishable.
Failing to recognize a cause of action for negligent infliction of emotional distress in the non-termination employment context would lead to the anomalous result of precluding an employee from receiving compensation for emotional distress suffered at the hands of employers — compensation that was certainly available under the Workers' Compensation Act prior to P.A. 93-228. The court can reasonably conclude, based upon the effects of P.A. 93-228 and the intent of the legislature in passing that act, that a cause of action for negligent infliction of emotional distress against an employer is permitted even where no termination is alleged.
The defendants also move to strike the fifth count on the ground that the plaintiffs fail to allege the requisite elements of a cause of action for negligent infliction of emotional distress. The defendants argue that although the plaintiffs allege that the "defendants each knew or should have known that their acts and omissions . . . involved an unreasonable risk of causing emotional distress"; (emphasis added) (count five, ¶ 46); the plaintiffs fail to allege that the defendants knew or should have known that such distress, "if it were caused, mightresult in illness or bodily harm." (Emphasis added.) (Defendants' Memorandum, p. 13.)
The Supreme Court first recognized a cause of action for negligent infliction of emotional distress in Montinieri v.Southern New England Telephone Co., 175 Conn. 337, 345,398 A.2d 1180 (1978). The court held that recovery did not "depend on proof of either an ensuing physical injury or a risk of harm from physical impact." Id. The court concluded, however, that the plaintiff has the burden of pleading that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that Ethel distress, if it were caused, might result in illness or bodily harm." (Emphasis added.) Id.; see also Buckman v. People Express. Inc.,205 Conn. 166, 173, 530 A.2d 596 (1987) Morris v. Hartford Courant Co., supra, 200 Conn. 683.
In the present case, the plaintiffs' allegations are CT Page 7922 insufficient to establish the conduct necessary to maintain an action for negligent infliction of emotional distress. The plaintiffs do not allege that the emotional distress caused by the defendants' conduct exposed them to the risk of illness orbodily harm. See Morris v. Hartford Courant Co., supra,200 Conn. 684 (affirming trial court's granting of motion to strike where plaintiff failed to allege "emotional distress caused by the defendant's conduct exposed him to the risk of illness or bodily harm"); Hearn v. Bridgeport Hospital, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 337350 (July 14, 1997, Thim, J.) (granting motion to strike on ground that complaint lacked allegation that "defendant should have realized . . . that distress, if it were caused, might result inillness or bodily harm" (emphasis in original)); Khouri v.Koloniaris, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 330880 (February 7, 1997, Melville, J.) (granting motion to strike [a]bsent this essential element" that "the distress, if it were caused, might result in illness orbodily harm" (emphasis in original)). Therefore, the motion to strike the fifth count on the ground that the plaintiffs have failed to sufficiently allege a cause of action for negligent infliction of emotional distress is granted.
 D. Count Six
The sixth count, intentional infliction of emotional distress, is directed against all individual defendants. The defendants move to strike count six on the grounds that (1) the plaintiffs fail to allege conduct that rises to the level of "extreme and outrageous" behavior as a matter of law, particularly as to the defendants Schenck, Hines, Woodford, Shea, Jeter and Hornaday; and (2) the claims and issues raised by the plaintiffs were the subject of a previous action in federal court determined in the defendants' favor and are therefore barred by the doctrines of res judicata and collateral estoppel.
In order to establish a claim for intentional infliction of emotional distress, the plaintiffs must plead that the defendants' conduct was extreme and outrageous. See DeLaurentisv. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807 (1991); Petyanv. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986); Drew v. K-MartCorp. , 37 Conn. App. 239, 251, 655 A.2d 806 (1995). "The issue of whether the defendant's conduct rises to the level of extreme and outrageous behavior is a question of law to be decided by the court. Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 18, CT Page 7923597 A.2d 846 (1991)." Luedee v. Strouse Adler Co., Superior Court, judicial district of New Haven at Meriden, Docket No. 257057 (January 29, 1998, Dunnell, J.). "Only where reasonable minds can differ does it become an issue for the jury." Mellaly v. EastmanKodak Co., supra, 18. "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) DeLaurentis v.New Haven, supra, 267. "`Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!'" Mellaly v. Eastman Kodak Co., supra, 20, quoting 1 Restatement (Second), Torts § 46, comment (d)
In the sixth count, as to the defendant Schenck, the only specific conduct alleged is that "by force of his position within the hierarchy and under the personnel rules of the Town, the defendant Town Manager confirmed and ratified the defendant Martino's illegal actions." (Count six, ¶ 36.) As to the defendants Hines, Woodford, Shea, Jeter and Hornaday, the only specific conduct alleged is that these defendants "had knowledge of," "were all aware of," and "had the power to prevent's the alleged violations of the plaintiffs' rights, "but neglected or refused to do so" and thereby "expressly agreed to, ratified, and permitted" the alleged violations. (Count six, ¶¶ 39-42.)
The allegations contained in the sixth count, even viewed in the light most favorable to the plaintiff, are legally insufficient under Connecticut law to allege extreme and outrageous behavior against the defendants Schenck, Hines, Woodford, Shea, Jeter and Hornaday. These facts alleging what amounts to rather passive behavior simply fail to show conduct which exceeds "all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause" severe mental distress. DeLaurentis v. New Haven, supra, 220 Conn. 267. Accordingly, the motion to strike count six, insofar as it is directed against the defendants Schenck, Hines, Woodford, Shea, Jeter and Hornaday, is granted.
With respect to the allegations against the defendant CT Page 7924 Martino, particularly those set out in count six, paragraphs 29 through 38, taken in the light most favorable to the plaintiffs, reasonable minds could differ as to whether such conduct rises to the level of extreme and outrageous behavior. On the one hand, it does not seem extreme and outrageous for an employer to direct an employee to reconsider or more properly complete a report or to state to an employee that failure to comply with orders amounts to insubordination requiring disciplinary measures. On the other hand, the allegations that the defendants Martino and Landers "harassed, intimidated and coerced the plaintiffs for approximately two hours regarding their original report, once again intimating what result defendants wanted in a new report"; (count six, 6 ¶ 31); together with the defendants' "intimidation, threats of discipline, anticipated disciplinary action for insubordination and attempts to engage plaintiffs in a conspiracy to destroy part of the record [of the police investigation]"; (count six, ¶ 33); if proven true, could be found to constitute extreme and outrageous behavior "of a nature which is especially calculated to cause" severe mental distress.DeLaurentis v. New Haven, supra, 220 Conn. 267.
Therefore the motion to strike the sixth count, insofar as it is directed against the defendant Martino, is denied on the ground that the court cannot say as a matter of law that the conduct alleged does not amount to extreme and outrageous behavior.
The defendants' alternatively argue that the sixth count should be stricken on the ground that the doctrines of res judicata and collateral estoppel bar the claims and issues raised therein from relitigation. The defendants argue that "two federal courts have specifically found that the [defendant Martino's] orders were entirely lawful and proper, and were in accordance with a valid order of the Department, and that the conduct of [the] plaintiffs in refusing to obey [Martino's] orders did, indeed, amount to insubordination. To the extent that [the] plaintiffs' claims are premised upon a threat of discipline' for their conduct, those Threats' have been conclusively determined to have been, at the least, reasonable, in good faith and warranted." (Defendants' Memorandum, pp. 17-18.)
For two reasons, the court will decline to address on this motion to strike any grounds raised by the defendants based on the doctrines of res judicata and collateral estoppel. First, the facts surrounding the alleged federal action and its alleged CT Page 7925 outcome are facts not alleged in the plaintiffs' second amended complaint. "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the complaint; Blancato v. Feldspar Corporation, 203 Conn. 34, 36,522 A.2d 1235 (1987); DeMello v. plainville, 170 Conn. 675, 677,368 A.2d 71 (1976); and cannot be aided by the assumption of any facts not therein alleged.' Fraser v. Henninger, 173 Conn. 52,60, 376 A.2d 406 (1977); Wexler Construction Co. v. HousingAuthority, 144 Conn. 187, 194, 128 A.2d 540 (1956). Where the legal grounds for such a motion are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be deduced at trial, and the motion should be denied." Liliedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990). Therefore, the court may not consider the facts surrounding the alleged federal action in determining the present motion to strike.
Secondly, the doctrines of res judicata and collateral estoppel are special defenses that must be specially pleaded in accordance with Practice Book § 10-50, formerly § 164. See Dunham v. Dunham, 221 Conn. 384, 387 n. 3, 604 A.2d 347
(1992); Statewide Grievance Committee v. Presnick, 216 Conn. 135,137 n. 3, 577 A.2d 1058 (1990); Carnese v. Middleton,27 Conn. App. 530, 537, 608 A.2d 700 (1992)." [T]he party asserting the affirmative defense of res judicata bears the burden of establishing its applicability." Commissioner of EnvironmentalProtection v. Connecticut Building Wrecking Co., 1227 Conn. 175,195, 629 A.2d 1116 (1993). "Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving [such claims]." Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 712,627 A.2d 374 (1993). Thus the defendants' invocation of the special defenses of res judicata and collateral estoppel is inappropriate, at this stage of the proceedings, particularly where the plaintiffs should be given the opportunity to submit supporting affidavits and other evidence, an opportunity not permitted on a motion to strike, in rebuttal of such defenses.
 E. Count Seven
The seventh count alleges a violation of General Statutes § 31-5m, the "whistleblower" statute.[6] The defendants move to strike count seven on the grounds that (1) the claims and issues raised therein are barred by the doctrines of res judicata and collateral estoppel;[7] (2) the plaintiffs fail to allege CT Page 7926 sufficient facts in support of this claim; and (3) the court lacks subject matter jurisdiction to consider the claim under § 21-51m due to the plaintiffs' failure to exhaust their administrative remedies.
With regard to the jurisdictional claim, the defendants argue that the plaintiffs have failed to exhaust the grievance procedures and remedies available to them under the terms of their collective bargaining agreement for resolution of their claim of improper discipline. (Defendants' Memorandum, pp. 20-21.) Section 31-51m (c) provides in relevant part: "Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may,after exhausting all available administrative remedies, bring a civil action . . . in the superior court . . . for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would otherwise have been entitled if such violation had not occurred. An employee's recovery from any such action shall be limited to such items. . . ." (Emphasis added.) The plaintiffs do not address the jurisdictional issue in their memorandum.
A claim that the court lacks subject matter jurisdiction is properly advanced by a motion to dismiss. See Practice Book §10-30, formerly § 143. It is axiomatic, however, that "[o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . and the court must fully resolve it before proceeding further with the case." (Emphasis added; internal quotation marks omitted.) Figueroa v. C S Ball Bearing, 237 Conn. 1, 4,675 A.2d 845 (1996). Thus, on the issue of jurisdiction, the court may treat the motion to strike as a motion to dismiss. SeePelliccio v. Fedco Omega, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 081500 (July 17, 1995, DiPentima, J.) (14 Conn. L. Rptr. 608).
"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union. . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. . . . The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule CT Page 7927 which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it." Saccardi v. Board of Education,45 Conn. App. 712, 715-16, 697 A.2d 716 (1997); see also Hunt v. Prior,236 Conn. 421, 431-32, 673 A.2d 514 (1996).
The court should not rule further on the defendants' motion to strike the seventh count until it has determined whether the claim raised therein is in the first instance properly before the court. "It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court. . . . Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Citations omitted; internal quotation marks omitted.) Federal Deposit Ins. Corp. v. Peabody. N.E., Inc.,239 Conn. 93, 99, 680 A.2d 1321 (1996)
"In determining whether a court lacks subject matter jurisdiction, the inquiry usually does not extend to the merits of the case." Cross v. Hudon, 27 Conn. App. 729, 733,609 A.2d 1021 (1992). "Because the elements of subject matter jurisdiction are dependent upon both law and fact . . . in some cases it may be necessary to examine the facts of the case to determine if it is within a general class [of cases] the court has power to hear." (Citations omitted; internal quotation marks omitted.) Id. "[W]hen a motion to dismiss does not seek to introduce facts outside of the record it is equivalent to our former motion to erase and admits all well pleaded facts, the complaint being construed most favorably to the plaintiff." (Internal quotation marks omitted.) Sagamore Group, Inc. v. Commissioner ofTransportation, 29 Conn. App. 292, 298, 614 A.2d 1255 (1992). A motion to dismiss may raise issues of fact, however, and "[w]hen issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) Cross v. Hudon, supra; see also Standard Tallow Corp.v. Jowdy, 190 Conn. 48, 56, 459 A.2d 503 (1983)
Here, the defendants argue a lack of subject matter jurisdiction based on a failure to exhaust the administrative remedies available under a collective bargaining agreement. The collective bargaining agreement is not before the court. CT Page 7928 Therefore a further evidentiary proceeding is necessary in order to determine the jurisdictional question and a ruling on the merits of the alternative grounds advanced by the defendants to strike the claim brought under § 31-51m must await a determination of whether such a claim is properly before the court in the first instance.
 F. Count Eight
The eighth count alleges a violation of General Statutes § 31-51q.[8] The sole ground advanced by the defendants for striking this claim is that "[t]he factual predicate for this claim, however, has already been conclusively adjudicated adversely to plaintiffs in the federal courts." (Defendants' Memorandum, pp. 21-21.)
The defendants' argument with regard to striking the eighth count amounts to invocation of the doctrines of res judicata and collateral estoppel. For the same reasons as stated in the previous discussion with regard to the sixth count, the court may not consider such a ground on the present motion to strike. Accordingly, the defendants' motion to strike the eighth count is denied.
 G. Count Nine
The ninth count, liability under General Statutes § 52 557n, is directed against the defendant Town of Avon. The defendants move to strike count nine on the ground that "there is no basis in this case for liability of any individual defendant for conduct which is sufficiently alleged to be negligent;" and "[t]o the extent the complained-of conduct was allegedly engaged in intentionally," § 52-557n provides no cause of action against the town. (Defendants' Memorandum, p. 23.)
General Statutes § 52-557n provides in relevant part: "(a)(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties. . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, CT Page 7929 fraud, actual malice or wilful misconduct . . . (Emphasis added.)
In the opinion of the court there are no explicit or implicit allegations contained in the complaint that sufficiently plead a cause of action for negligence against any of the named individual employees of the defendant Town of Avon. Rather, the complaint contains several express allegations that these individuals defendants acted in "reckless" and "deliberate" disregard of the plaintiffs' rights; (count nine, ¶¶ 39, 40); and with "malice" against the plaintiffs. (Count nine, ¶ 42.)
"`While [courts] have attempted to draw definitional [distinctions] between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing.'" Bhinder v. Sun Co., 246 Conn. 223, 242 n. 14,717 A.2d 202 (1998), quoting Dubay v. Irish, 207 Conn. 518, 533,542 A.2d 711 (1988); see also Elliott v. City of Waterbury, 245 Conn. 385,415, 715 A.2d 27 (1998) (legal concepts of wanton, reckless, wilful, intentional and malicious conduct indistinguishable);Bauer v. Waste Management of Connecticut, Inc., 239 Conn. 515,527, 686 A.2d 481 (1996) ("A wilful act is one done intentionally or with reckless disregard of the consequences of one' s conduct.")
Accordingly the defendants' motion to strike the ninth count should be granted on the ground that § 52-557n (a)(2)(A) specifically exempts the defendant Town of Avon from liability for the wilful, i.e., intentional, deliberate, reckless and malicious, misconduct of its employees.
 H. Count Ten
The tenth count, respondeat superior, is directed against the defendant Town of Avon. The defendants move to strike count ten on the ground that the town cannot be held vicariously liable for the intentional torts of its employees.[9]
Under the common law doctrine of respondeat superior, "a master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business." Larsen Chelsey Realty Co. v. Larsen,232 Conn. 480, 500, 656 A.2d 1009 (1995). "The theory of respondeat superior attaches liability to a principal merely because the agent committed a tort while acting within the scope of his employment. It refers to those acts which are so closely CT Page 7930 connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." (Internal quotation marks omitted.) Id., 505.
Nevertheless, the defendants are correct that the defendant Town of Avon may not be held vicariously liable for the alleged torts of its employees, the individual defendants, under the common law doctrine of respondeat superior. "At common law, municipal officers were liable for their own torts, but the municipality, their municipal `master,' was not vicariously liable for those torts." Sanzone v. Board of Police Commissioners,219 Conn. 179, 193, 592 A.2d 912 (1991) While it is clear that a municipality enjoys the protection of governmental immunity for common law vicarious liability, the Supreme Court has recognized that governmental immunity may be abrogated by statute. SeeWilliams v. New Haven, 243 Conn. 763, 766, 707 A.2d 1251 (1998). With regard to the tenth count in the present case, however, the plaintiffs do not rely on or cite any statute as a means of abrogating the defendant town's immunity from common law vicarious liability. The failure to do so is fatal to the cause of action advanced in count ten. See id., 769. Accordingly, the defendants' motion to strike the tenth count is granted.
 I. Count Eleven
The eleventh count, indemnification under General Statutes § 7-465, is directed against the defendant Town of Avon. Similar to their argument in regard to counts nine and ten, the defendants move to strike count eleven on the ground that §7-465 provides no cause of action against the defendant Town of Avon under the allegations as pleaded.
General Statutes § 7-465 provides in relevant part: "Any town, city or borough . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of suchCT Page 7931employee in the discharge of such duty." (Emphasis added.) Section 7-465 "effectively circumvented the general common law immunity of municipalities from vicarious liability for their employees' acts by permitting injured plaintiffs to seek indemnification from a municipal employer for such acts under certain circumstances and after conformance with certain statutory requirements" Sanzone v. Board of PoliceCommissioners, supra, 219 Conn. 193.
As it was in the previous discussion relating to the motion to strike count nine, there are no explicit or implicit allegations contained in the complaint that sufficiently plead a cause of action for negligence against any of the named individual employees of the defendant Town of Avon. Rather, the complaint contains several express allegations indicating that these individual defendants acted in "reckless" and "deliberate" disregard of the plaintiffs' rights; (count eleven, ¶¶ 39, 40); and with "malice" against the plaintiffs. (Count eleven, ¶ 42.) Although the plaintiffs make the conclusory allegation that the infringements of their rights "were not the result of any wilful or wanton act of the defendants"; (count eleven, 6 46); such a conclusory allegation, unsupported by any of the specific factual allegations made in the complaint, and in fact directly contradicted by these allegations, is insufficient on a motion to strike to support the cause of action. See NovametrixMedical Systems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215.
Accordingly, the plaintiffs fail to state a cause of action under § 7-465 since the statute expressly excludes indemnification for wilful and wanton conduct. As previously discussed, "recklessness is equivalent to wanton and wilful conduct. . . ." Steiger v. Town of Old Lyme, Superior Court, judicial district of New London at New London, Docket No. 510846 (February 25, 1994, Austin, J:), citing Dubay v. Irish, supra,207 Conn. 533; see also Bhinder v. Sun Co., supra, 246 Conn. 242
n. 14 ("While [courts] have attempted to draw definitional [distinctions] between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing.'"); Elliott v. City of Waterbury, supra, 245 Conn. 415
(legal concepts of wanton, reckless, wilful, intentional and malicious conduct indistinguishable); Bauer v. Waste Managementof Connecticut, Inc., supra, 239 Conn. 527 ("A wilful act is one done intentionally or with reckless disregard of the consequences of one's conduct.") CT Page 7932
The defendants' motion to strike the eleventh count is granted on the ground that § 7-465 specifically excludes a cause of action for indemnification against the defendant Town of Avon when its employees' conduct is alleged to be wilful or wanton, i.e., intentional, deliberate, reckless and malicious.
 J. Count Twelve
The twelfth count, violation of rights secured by the Connecticut constitution, is directed against all defendants.[10] The defendants move to strike count twelve on the ground that no such cause of action for monetary or punitive damages for the alleged violation of the state constitution has ever been recognized in Connecticut.
"Not every constitutional right or relationship gives rise to tort liability for its violation. Compare, e.g., Kelley PropertyDevelopment, Inc. v. Lebanon, 226 Conn. 314, 627 A.2d 909 (1993) (no private cause of action based on violation of due process clause of state constitution, article first, § 8), withBinette v. Sabo, 244 Conn. 23, 710 A.2d 688 (1998) (private cause of action based on violation of search and seizure provisions of state constitution, article first, §§ 7 and 9)." Mendillo v.Board of Education, 246 Conn. 456, 493, 717 A.2d 1177 (1998). InKelley Property Development, Inc. v. Lebanon, supra, 339, the Supreme Court stated: "[A]5 a general matter, we should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate statutory remedy. This conclusion accords with the constitutional principle of separation of powers and its requirement for judicial deference to legislative resolution of conflicting considerations of public policy."
Significantly, the Supreme Court then gave, an example of one such statutory remedy provided by the legislature — General Statutes § 31-51g. See id., 340. As previously mentioned in the discussion regarding the motion to strike count eight, this statute provides a damages (including punitive damages) remedy to any employee who is subjected to discipline or discharge "on account of the exercise by such employee of rights guaranteed by . . . [section] 4 . . . of article first of the Constitution of the state. . . ." General Statutes § 31-51q. Thus, the court should decline to recognize a cause of action under the state constitution for the alleged violation of the plaintiffs' right CT Page 7933 to speak freely since the legislature has provided an adequate remedy by statute. Accordingly, the defendants' motion to strike count twelve is granted on the ground no such cause of action therein pleaded exists under the state constitution.
 CONCLUSION
For the foregoing reasons, the defendants' motion to strike the plaintiffs' second amended complaint, insofar as it is directed against counts three, four, five, nine, ten, eleven and twelve, is granted. The defendants' motion to strike, insofar as it is directed against count eight, is denied.
The defendants' motion to strike count six, insofar as it is directed against the defendants Schenck, Hines, Woodford, Shea, Jeter and Hornaday, is granted. However, the motion to strike count six, insofar as it is directed against the against counts three, four, five, nine, ten, eleven and twelve, is granted. The defendants' motion to strike, insofar as it is directed against count eight, is denied.
The defendants' motion to strike count six, insofar as it is directed against the defendants Schenck, Hines, Woodford, Shea, Jeter and Hornaday, is granted. However, the motion to strike count six, insofar as it is directed against the defendant Martino, is denied.
Finally, the defendants' motion to strike, insofar as it is directed against count seven, raises the issue of subject matter jurisdiction over the claim alleged therein which must be resolved before proceeding further with the merits of the alternative grounds advanced for striking this count.
Hale, J.