[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION Motion To Dismiss First And Second Counts of Second Revised Complaint Dated November 10, 1998
[118]
For over eight years, the plaintiff, George Lathrop, was an officer with the East Hampton Police Department. "On or about November 3, 1995, the plaintiff, George Lathrop, resigned from his employment as a police officer. . . ." Second Revised Complaint, November 10, 1998, ¶¶ 3, 4. [106]
On November 3, 1997, Lathrop brought this action against the Town of East Hampton, Eugene B. Rame, its Chief of Police, and Alan H. Bergren, its Town Manager.
In his Second Revised Complaint, November 10, 1998, Lathrop alleges a "constructive discharge" claiming he resigned only because "the defendants threatened unwarranted criminal prosecution." Second Revised Complaint, November 10, 1998, ¶ 8. [106]
The complaint has five counts alleging (1) constructive discharge, (2) violation of the covenant of good faith and fair dealing in plaintiff's contract of employment, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, and (5) intentional interference with contractual expectancies.
The defendants have alleged two special defenses. They allege:
"By Way of First Special Defense
 If the plaintiff proves the allegations of the Second Revised Complaint, which allegations are denied by the defendants, the plaintiff can still not recover herein, as there was a sufficient basis upon which to discharge the plaintiff for just cause pursuant to Article XVI of the Arbitrated Award between the Town of East Hampton and the International Brotherhood of Police Officers Local 524 which Arbitrated Award covers the period July 1, 1995 through and including June 30, 1998."
 "By Way of Second Special Defense
 The plaintiff's claims for constructive discharge and breach of the covenant of good faith and fair dealing in his employment contract are barred as the plaintiff failed to exhaust his administrative remedies as set forth in the Arbitrator's Award between the Town of East Hampton and the International Brotherhood of Police Officers, Local 524." CT Page 6906
Amended Answer and Special Defenses To Second Revised Complaint, August 17, 2000, p. 2. [120]
Lathrop denied the special defenses. Plaintiff's Reply To Special Defense, September 19, 2000, p. 2. [110]
The immediate events leading to Lathrop's resignation or constructive discharge began on Sunday, September 4, 1995. A Department of Environmental Protection (DEP) officer at the Salmon River State Park had a person in custody. The DEP officer did not have arrest powers. Lathrop was assigned. When Lathrop arrived to meet the DEP officer at the park, the DEP officer informed him that he had a young male, Steven Graham, in custody and, he (the DEP officer) had taken a small amount of marijuana and a marijuana bong from Graham. "Graham was turned over to me for disposition." The DEP officer also gave the marijuana and the bong to Lathrop. Although Graham already was in custody, Lathrop alleges he "chose not to arrest [the] juvenile for possession of marijuana and possession of drug paraphernalia." Second Revised Complaint, November 10, 1998, ¶ 8. [106] Lathrop turned Graham over to his parents. Lathrop says he thought turning Graham over to his parents was sufficient. He also hoped to use Graham as a source to solve some pending crimes. See footnote 1.
Lathrop wrote an incident report recounting some of the above on the day of the incident, September 4, 1995.[1] His report does not mention that the DEP Officer handed the contraband (marijuana and bong) over to Lathrop.[2] Lathrop took possession of the marijuana and bong. Nor does it mention Lathrop kept the marijuana and bong. In this action, Lathrop continually describes Graham as a "16-year old juvenile," but the September 4, 1995 incident report says his Graham's "D.O.B." is "4-7-75." See footnote 1. Thus, it appears the "juvenile" was five months past his 20th birthday.
Lathrop did not turn in the marijuana and bong to the department. On September 13, 1995, Lathrop was interviewed by the chief and another officer concerning the whereabouts of the marijuana and bong. At one point Lathrop indicated that the marijuana and bong were at his home. At other times, he indicated the marijuana was in his briefcase which briefcase either had been above his locker at the police station or in his assigned cruiser. In any event, officers of the department and Lathrop went to Lathrop's home. Lathrop there obtained the marijuana and bong from his home and turned it over to the officers.
Subsequently, Lathrop and the police chief had a conversation. During that conversation the chief indicated that if Lathrop would resign his CT Page 6907 position with the police department, the chief would not seek criminal prosecution.[3]
Immediately thereafter, the chief and Lathrop met with the town manager, James Bergren, in the Town manager's office. The town manager's secretary typed a letter of resignation. Lathrop signed it. The letter of resignation was dated September 13, 1995; the resignation was to take effect on November 3, 1995.
On November 3, 1997, the defendants were served with the original complaint in this action. See Return of Service, November 3, 1997, attached to original writ summons and complaint.
Defendants have moved to dismiss Counts One and Two of the Revised Amended Complaint because the plaintiff failed to exhaust the administrative remedies afforded by the collective bargaining agreement. According to the defendants, this is a jurisdictional defect. Motion To Dismiss First And Second Counts of Second Revised Complaint, August 17, 2000. [118] See also, Memorandum Of Law In Support of Motion To Dismiss, August 17, 2000. [119]
A failure to exhaust available administrative remedies has long been recognized as implicating the subject matter jurisdiction of the Superior Court. Specific to the case at hand, the failure to exhaust the grievance procedure provided in a collective bargaining agreement ousts the court of jurisdiction. Trigila v. Hartford, 217 Conn. 490 (1991); other cases.
The plaintiff does not dispute the general rule. See Plaintiff's Memorandum of Law In Opposition To Defendants' Motion To Dismiss, September 19, 2000, pp. 2-3. [122] However, plaintiff claims and relies on the "futility" exception to the rule, namely, it is unnecessary to pursue the administrative remedy where "recourse to the administrative remedy would be futile or inadequate."
Plaintiff states:
 "The plaintiff alleges that he resigned under duress and had no choice but to submit his resignation. The dispute between the parties, as counsel for the defendant has pointed out, is whether or not the plaintiff was constructively discharged. There is nothing in the collective bargaining agreement which gives either the town or the State Board of Mediation and Arbitration the authority to determine that question and to provide the plaintiff with the relief he requests which is the reinstatement to his position CT Page 6908 as a police officer for the Town of East Hampton.
 "Article XXVII of the collective bargaining agreement sets for [Sic] the grievance procedure and states that its purpose is, . . . "to settle employee grievances on as low an administrative level as possible and practicable, so as to insure efficiency and employee morale." Section 2 of the grievance procedure goes on [Sic] state that a grievance shall be defined as, . . . "an employee or Union complaint concerned with the specific violation of Department rules and regulations pertaining to mandatory subjects of collective bargaining or the misapplication or misinterpretation of specific terms of the articles and sections of this Agreement." Article XXVII goes on further, at Step 3 of the grievance process, to provide that the decision rendered by the arbitrator or arbitrators "shall not amend or alter this Agreement in any manner." No where [Sic] does the collective bargaining agreement address the dispute between the parties, i.e. whether the plaintiff was constructively discharged and the arbitrators, like the parties, are bound by the terms of the collective bargaining agreement. Because the collective bargaining agreement does not address the constructive discharge there is no practical relief that can be granted the plaintiff and thus, he is excused from exhausting his administrative remedies." [Italics added.]
Plaintiff's Memorandum of Law In Opposition To Defendants' Motion To Dismiss, September 19, 2000, pp. 4-5. [122][4]
Plaintiff claims that the dispute, which he fashions "a constructive discharge" is not subject to the grievance procedure because the collective bargaining agreement does not contain or use the term, "constructive discharge."
A reality check is in order. Labels aside, plaintiff claims he was "constructively discharged" because he "chose not to arrest a juvenile[5]
for possession of marijuana and possession of drug paraphernalia." Second Revised Complaint, November 10, 1998, 6. [106] Elaborating, plaintiff alleges:
 "More particularly, the defendants threatened unwarranted criminal prosecution as it related to the plaintiff's previous proper and legal exercise of his CT Page 6909 discretion as a police officer when the plaintiff elected not to effect the arrest of a juvenile for alleged possession of marijuana and, instead, referred said juvenile to his parents in lieu of initiating criminal/delinquency proceedings."
Id., 8.
Plain and simple, plaintiff claims he was fired because he had not arrested the juvenile but instead turned him over to his parents. It is at least implicit that plaintiff claims his firing for this reason was not "just cause." The collective bargaining agreement states:
 "No permanent officer shall be suspended, discharged or penalized except for just cause." Article XXVI DISCIPLINARY ACTION SECTION 1 — JUST CAUSE
This case was begun by plaintiff's complaint dated October 31, 1997. Complaint, October 31, 1997. [ ] It was served on the defendants on November 3, 1997. Return of Service, November 3, 1997. [ ]
Plaintiff primarily relies on Mendillo v. Board of Education,246 Conn. 456 (1998) to further his claim that his constructive discharge is not covered by the collective bargaining agreement. In that case, plaintiff had been a high school principal. According to her, the defendant superintendent of schools "`engaged in a deliberate effort to harass and torment the plaintiff . . . making her continued employment with the East Haddam school district, for all practical purposes impossible. The plaintiff also alleged that as a result of this course of conduct, she was "constructively discharged". . . .'" (Footnote omitted.) Id., 465-6.
Plaintiff brought an action for damages. "The defendants moved to dismiss the entire [action] for lack of subject matter jurisdiction." Defendants asserted as grounds that "(1) the plaintiff had failed to exhaust her administrative remedies under § 10-151 (d); (2) the plaintiff had failed to exhaust the grievance and arbitration procedures of an agreement between the board of education and the East Haddam Administrators' Association, of which the plaintiff had been a member (agreement); and (3). . . ." Id., 462.
Plaintiff agreed that the failure of tenured teacher to invoke the administrative procedures provided in C.G.S. § 10-151 (d)[6]
ordinarily deprives the court of jurisdiction over a claim of wrongful termination, plaintiff argued that "a claim of constructive discharge comes within the exception to the exhaustion doctrine for cases in which CT Page 6910 recourse to the administrative remedy would be futile or inadequate."Mendillo, supra, 246 Conn. 464.
The essence of plaintiff's constructive discharge claim was that "although in form she submitted a letter of resignation, in substance she was forced to submit that letter by Thomson's [the defendant school superintendent] intentionally harassing and tormenting course of conduct toward her." Id., 467-8. Defendants denied Thompson had engaged in such a course of conduct. Defendants relied on plaintiff's letter of resignation.
The Supreme Court wrote a precis of § 10-151 (d):
 "Under § 10-151 (d), there are six potential grounds for termination of the contract of a tenured teacher: (1) inefficiency or incompetence; (2) insubordination; (3) moral misconduct; (4) medical disability; (5) elimination of the teacher's position; and (6) "other due and sufficient cause.' If termination of a teacher's contract is contemplated, the superintendent must first give the teacher written notice "that termination of such teacher's contract is under consideration. . . ." General Statutes (Rev. to 1991) § 10-151 (d). If the teacher then makes a timely written request, the superintendent must give the teacher a timely "statement in writing of the reasons' for the proposed termination, which must fall within one or more of the six grounds for termination. General Statutes (Rev. to 1991) § 10-151
(d). The teacher may respond by making a timely request for a hearing before the board of education. General Statutes (Rev. to 1991) § 10-151 (d). The function of the hearing is, in general, to resolve the question of whether any of the asserted grounds for termination is supported by the evidence adduced at the hearing. . . . At that hearing, moreover, the burden of proof is on the superintendent." (Citations omitted.)
Mendillo v. Board of Education, 246 Conn. 456, 468-9 (1998).
The Supreme Court set forth this analysis:
 "To require the plaintiff, under the facts of the present case, to invoke the provisions of § 10-151
(d) would be to attempt to force the proverbial square CT Page 6911 peg into a round hole. The dispute between the parties is not whether the plaintiff has engaged in any of the six potential grounds for termination. The defendants do not claim that she has. The dispute is whether she resigned voluntarily or was forced to do so by the wrongful conduct of Thompson. That kind of factual dispute simply does not fit within either the purpose or the language of § 10-151 (d). The board of education would not have been empowered, under § 10-151 (d), to determine whether a constructive discharge took place because that question is not one of the statutorily defined subjects of a hearing under the statute. Recourse to the administrative remedy of § 10-151 (d) would, therefore, be futile because the board of education would have been without the authority to grant the relief requested by the plaintiff. Cannata v. Dept. of Environmental Protection, [215 Conn. 616, 628 (1990)].
 "This conclusion is buttressed by attempting to envision what would happen under the exhaustion scenario urged by the defendants. Under that scenario, although there had been no formal written notice of proposed termination as required by the statute, the defendants contend that such a notice was not necessary because the plaintiff, by her own allegations, already knew that she had been terminated. The defendants maintain that she then had the obligation to request a hearing before the board of education. Presumably, that request would be for a hearing on the ground of the plaintiff's complaint, namely, that Thompson's intentionally harassing course of conduct toward her had forced her to submit her letter of resignation. Having alleged, however, that she had been in effect terminated by Thompson's conduct, she then presumably would have been confronted, not with a statement by Thompson that she had committed any of the six grounds for termination under § 10-151 (d), but with a statement that Thompson did not engage in any such conduct and that she in fact had resigned. Moreover, because she had alleged the facts constituting the constructive discharge, she presumably then would have had the burdens of production and persuasion on those allegations. CT Page 6912
 "The hearing, therefore, as framed by her request and Thompson's reply, would have been to resolve the question of whether Thompson had constructively discharged her or she had resigned. It would not have involved whether any of the six statutory grounds for termination had been proven. Thus, the hearing before the board of education would have borne neither substantive nor procedural resemblance to the kind of hearing contemplated by § 10-151 (d)."
Mendillo, supra, 246 Conn. 469-70.
The Supreme Court reiterated several times why the administrative remedy in § 10-151 (d) was not applicable.
 "This exception applies to the facts of the present case because the issues in controversy between plaintiff and the defendants are not the issues contemplated by a termination hearing under § 10-151
(d)." Mendillo, supra, 246 Conn. 467.
 "This simply is not the kind of dispute that a termination hearing pursuant to § 10-151 (d) is designed to resolve." Id., 468.
 "The board of education would not have been empowered, under § 10-151 (d), to determine whether a constructive discharge took place because that question is not one of the statutorily defined subjects of a hearing under the statute." Id., 469.
 "Thus, the hearing before the board of education would have borne neither substantive or procedural resemblance to the kind of hearing contemplated by § 10-151 (d)." Id., 470.
 Mendillo provides plaintiff with little aid. Mendillo's plaintiff and plaintiff here both claimed a wrongful constructive discharge. Defendants in both cases claimed the plaintiff had failed to exhaust the available administrative remedy. There, the similarities end.
As seen, the claimed applicable administrative remedy in Mendillo, the procedure for terminating a tenured teacher under § 10-151 (d) was wholly inappropriate to the circumstances. The statute provided the means for terminating a teacher or principal. The statute required the school board to initiate the termination process and to man the laboring oar to CT Page 6913 effect termination. But, the school board denied it sought Mendillo's termination; the board claimed she had resigned. Therefore, the school board's claim Mendillo had to exhaust the administrative remedy afforded by § 10-151 (d) was wrong. The claim that the § 10-151 (d) administrative remedy was one Mendillo was required to pursue and exhaust was just plain bogus. Mendillo had no reason, authority, or means to institute and/or prosecute the § 10-151 (d) termination procedure against herself. Nor, would she have claimed she should be terminated for any of the six reasons given for termination listed in the statute.
Plaintiff also relies on Johnson v. City of Bridgeport, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 321129 (June 3, 1999, Nadeau, J.). That case involved a suit by a former school administrator who claimed a constructive discharge. The defendants moved to have the wrongful discharge count of the complaint dismissed for failure to exhaust the grievance and arbitration procedure in the collective bargaining agreement. Plaintiff countered that the grievance and arbitration procedure did not apply to a constructive discharge. The court found:
 "The procedure covers complaints that an administrator `has been treated unfairly or inequitably because of a violation, misinterpretation, or misapplication of the provisions of this agreement or of established policy or practice.' Whether the plaintiff was constructively discharged appears not to be one of the subjects covered by the grievance and arbitration procedure pursuant to the CBA [collective bargaining agreement]."
Johnson v. City of Bridgeport, supra, Superior Court, Docket No. 321129.
The court denied defendants' attempt to have the count dismissed based on the exhaustion doctrine.
This court does not have a copy of the collective bargaining agreement in Johnson. It does not know what provision(s), if any, of that agreementJohnson relied upon. Nor does it know what "established policy(ies) or practice(s)," if any, Johnson relied upon. Therefore, this court cannot say if it agrees with Johnson v. City of Bridgeport. But, if Johnson claimed a violation of some right based on a right recognized in the collective bargaining agreement or a right premised on a violation of "established policy or practice," and, that case was decided solely on the absence of the term "constructive discharge" in the collective bargaining agreement, then this court respectively disagrees with JohnsonCT Page 6914v. City of Bridgeport.
The case at hand differs markedly from Mendillo v. Board of Education,246 Conn. 456 (1998). Rather than the defendant school board's claim that Mendillo had failed to exhaust an administrative remedy which the school board alone could initiate and prosecute, and which Mendillo was powerless to employ, the collective bargaining agreement's grievance procedure in this case clearly was designed and capable of hearing and deciding plaintiff's claim that he was terminated without just cause because he "elected not to effect the arrest of a juvenile for alleged possession of marijuana and, instead, referred said juvenile to his parents in lieu of initiating criminal delinquency proceedings." Second Revised Complaint, November 10, 1998, par; 8.
The essence of plaintiff's claim is that although he submitted his resignation, the defendants' actions were a "constructive discharge." Second Revised Complaint, November 10, 1998, p. 2, ¶¶ 6 and 8. [106] Defendants' acts were an "abuse of police authority." Id., ¶ 8. Plaintiff states:
 "No where does the collective bargaining agreement address the dispute between the parties, i.e., whether the plaintiff was constructively discharged . . . Because the collective bargaining agreement does not address a constructive discharge there is no practical relief that can be granted the plaintiff and thus, he is excused from exhausting his administrative remedy. [Italics added.]
Plaintiff's Memorandum of Law In Opposition To Defendant's Motion To Dismiss, September 19, 2000, p. 5. [122][7]
Simply stated, plaintiff bases his "futility" exception to the exhaustion doctrine on the absence of the term "constructive discharge" in the collective bargaining agreement.[8]
Plaintiff is correct, the collective bargaining agreement does not state ipsissimis verbis that a constructive discharge is subject to the grievance procedure.
The collective bargaining agreement provides: "No permanent officer shall be suspended, discharged or penalized except for just cause." Under the collective bargaining agreement a "grievance" includes "the misapplication . . . of specific terms or of the articles and section of this agreement." Surely, a violation of the "[n]o permanent officer shall be suspended, discharged or penalized except for just cause" provision is CT Page 6915 a misapplication of that provision and therefore a grievance under the collective bargaining agreement.
"Through the use of constructive discharge, the law recognizes that an employee's `voluntary' resignation may be, in reality, a dismissal by the employer." Seery v. Yale-New Haven Hospital, 17 Conn. 532, 540 (1989). See also, Brittell v. Dept. of Correction, 247 Conn. 148, 178 (1998). A "constructive discharge" is nevertheless a "discharge." Appleton v. Boardof Education, 53 Conn. App. 252, 261 (1999); reversed in part on other grounds, 254 Conn. 205 (2000).[9],[10]
With these principles in mind, the court examines the plaintiff's claim. Plaintiff alleges defendants discharged him because "he elected not to effect the arrest of a juvenile for the alleged possession of marijuana, and, instead referred said juvenile to his parents in lieu of initiating criminal/ delinquency proceedings." Second Revised Complaint, November 10, 1998, p. 2, ¶ 8. [106] Plaintiff must claim his discharge for this reason would not constitute "just cause." A violation of the "except for just cause" provision of the collective bargaining agreement is a grievance under the collective bargaining agreement. Plaintiff acknowledged this in a colloquy with the court:
THE COURT: Was he separated from —
ATTY. BUFFKIN: Absolutely, Your Honor.
 THE COURT: — his employment without just cause? Is that his claim?
ATTY. BUFFKIN: In essence, yes, Your Honor.
 THE COURT: Okay. All right. What's the source of the just cause standard?
 ATTY. BUFFKIN: The source of the just cause standard is the contractual agreement by the parties.
THE COURT: The Collective Bargaining Agreement.
ATTY. BUFFKIN: Yes
Transcript of Proceedings, February 8, 2001[11]
Mendillo is not authority that a "constructive discharge" is beyond the reach of a collective bargaining agreement's grievance mechanism. Plaintiff's dubbing defendant's actions a "constructive discharge" does CT Page 6916 not carry the day.
The label a party uses to describe his claim is not controlling. The court must look to the substance of a claim, not its label.
An approving Supreme Court has stated:
 "Thus, as the Appellate Court has recently stated in rejecting a claim indistinguishable from that raised by the plaintiff in this case, "[t]he plaintiff may not choose [his] administrative remedy through the framing of [his] own complaint. If that were possible, the purpose of the exhaustion doctrine would be thwarted.' Savoy Laundry, Inc. v. Stratford,
[32 Conn. App. 636, 642 (1993)]." Hunt v. Prior, 236 Conn. 421, 435 (1996).
So too, "the plaintiff may not [avoid] [his] administrative remedy through the framing of his [own] complaint."
 "We must examine the complaint to determine whether the [plaintiff was] required to exhaust an administrative remedy before the Superior Court could entertain this action. Whether prior recourse to the agency will be required will depend on the injury alleged and the administrative remedy available. . . . Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 519, 442 A.2d 920 (1982)."
Savoy Laundry, Inc. v. Stratford, 32 Conn. App. 636, 640 (1993); cert. denied, 227 Conn. 931 (1993)
Saccardi v. Board of Education, 45 Conn. App. 712 (1997), is to like effect:
 "The plaintiff seeks to place his claims outside the purview of the collective bargaining agreement simply by labeling the acts of the board and the other defendants as disciplinary and thus in violation of the December 1989 agreement. This court has stated that `[t]he plaintiff may not choose [his] administrative remedy through the framing of [his] own complaint. If that were possible, the purpose of the exhaustion doctrine would be thwarted.' Savoy Laundry, Inc. v. Stratford, 32 Conn. App. 636, 642, 630 A.2d 159, cert. denied. 227 Conn. 931, 632 A.2d 704
CT Page 6917 (1993)." (Footnote omitted.)
Saccardi v. Board of Education, supra, 45 Conn. App. 718.
The court has examined the plaintiff's claim. That claim is simply a claim that he was discharged without "just cause." A discharge "except for just cause" violates the collective bargaining agreement. As such, it constitutes a grievable offense. A grievance must be pursued within the grievance mechanism provided in the collective bargaining agreement. The failure to do so is a failure to exhaust the available administrative remedy.
Plaintiff's position now is in marked contrast to that taken in the summer of 1996. In fact in July 1996, plaintiff's counsel wrote to Chief Rame to initiate the grievance procedure under the collective bargaining agreement:
"As you know I represent George E. Lathrop.
 "On September 13, 1995, Mr. Lathrop submitted his resignation as an East Hampton Police Officer. The foresaid resignation was effective November 3, 1995.
 "It is Mr. Lathrop's position that the resignation' in effect constituted a constructive discharge and, accordingly, under Article XXVI and Article XXVI [Sic.] of the collective bargaining agreement between the Town of East Hampton and the International Brotherhood of Police Officers, Mr. Lathrop is hereby grieving his termination and requesting that the appropriate revisions [Sic.] of the grievance procedure be implemented. Since Mr. Lathrop was not formally terminated, I would suggest that this grievance be administered as step one of the grievance procedure.
 "In the event that you feel that a meeting/hearing is in order I will of course make myself immediately available."
Letter to Chief Rame from Albert J. McGrail, counsel for plaintiff dated July 15, 1996. Exhibit 2 to Memorandum of Law In Support of Motion To Dismiss, August 17, 2000. [119]
Defendants' counsel responded:
 "I am in receipt of a copy of your letter to Chief CT Page 6918 Rame regarding George Lathrop. Please be advised this office represents the Town of East Hampton in this matter. All future correspondence and communications therefore should be directed to me.
 "With respect to your request `that this grievance be administered as step one of the grievance procedure," please be advised that Mr. Lathrop's resignation is not grievable and that his alleged constructive discharge is untimely filed.
Letter to Attorney McGrail from Attorney Victor Schoen, counsel for the Town of East Hampton dated July 26, 1996. Exhibit 3 to Memorandum of Law In Support of Motion To Dismiss, August 17, 2000. [119]
Plaintiff's counsel then wrote:
 "I am in receipt of your letter of July 26, 1996 (received by this office on July 29, 1996). It is my understanding on the basis of your letter that you are authorized to receive any and all future correspondence and communications relating to the above-captioned matter.
 "Accordingly, you may treat this letter as a submission of Mr. Lathrop's grievance to the second step of the grievance procedure as set forth in Article XXVI of the Collective Bargaining Agreement.
 "I am presently on vacation, and will contact you upon my return to discuss the status of this file.
Letter to Attorney Schoen from Attorney McGrail dated August 19, 1996. Exhibit 4 to Memorandum of Law In Support of Motion To Dismiss, August 17, 2000. [119]
The record in this case does not show anything further regarding implementation of the grievance procedure prior to this suit.
But it is noteworthy that in July 1996, it was plaintiff's "position that the `resignation' in effect constituted a constructive discharge and, accordingly, under . . . the collective bargaining agreement Mr. Lathrop is hereby grieving his termination and requesting that the appropriate revisions [Sic.] of the grievance procedure be implemented." He then submitted the grievance a second time. CT Page 6919
Plaintiff had it right in the summer of 1996. His alleged "constructive discharge, an alleged "wrongful discharge" was a matter subject to the grievance mechanism provided in the collective bargaining agreement. He should have filed it in a timely manner.[12]
The defendants' motion to dismiss the first and second counts of the second revised complaint is granted.
 * * *
On February 8, 2001, the court heard argument on defendants' motion to dismiss the first and second counts of the second revised complaint. During the argument, the court raised the issue of whether dismissal of the first and second counts required dismissal of any or all of the other three counts. The parties were invited to submit briefs on that question. Both did. Plaintiff's Supplemental Memorandum of Law In Opposition To Defendants' Motion To Dismiss, February 22, 2001 [124]; Defendants' Supplemental Memorandum of Law In Support of Motion For Summary Judgment, February 27, 2001, [125]
The remaining three counts of the Second Revised Complaint sound in (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress and, (5) intentional interference with contractual expectancies. Second Revised Complaint, November 10, 1998. [106]
The third, fourth, and fifth counts each specifically repeat and incorporate paragraphs 6 and 8 of the first count. The court sets forth these paragraphs here:
 "6. The aforesaid resignation was submitted by the plaintiff, GEORGE LATHROP, after the defendants RAME and BERGREN, acting individually and/or as agents of the defendant TOWN, threatened to have the plaintiff arrested for possession of marijuana and possession of drug paraphernalia arising from an incident wherein the plaintiff, exercising his discretion as a police officer, chose not to arrest a juvenile for possession of marijuana and possession of drug paraphernalia.
 "8. The actions of the defendant TOWN and its agents, servants, and employees, the defendants RAME and BERGREN, was a constructive discharge of the plaintiff's employment and, as it arose from the abuse of police authority, was a violation of the public policy of the State of Connecticut and tortuous [Sic.] in nature. More particularly, the defendants CT Page 6920 threatened unwarranted criminal prosecution as it related to the plaintiff's previous proper and legal exercise of his discretion as a police officer when the plaintiff elected not to effect the arrest of a juvenile for alleged possession of marijuana and, instead, referred said juvenile to his parents in lieu of initiating criminal/delinquency proceedings. Moreover, the defendant threatened the criminal prosecution in order to effect the voluntary resignation of the plaintiff from his employment which is not within the scope and authority of police investigatory power."
The claims for intentional infliction of emotional distress — third count, negligent infliction of emotional distress — fourth count, and intentional interference with contractual expectancies — fifth count are each premised on the allegations of paragraphs 6 and 8. In order to prevail on any of these three counts plaintiff would have to prove paragraphs 6 and 8. Paragraphs 6 and 8 are the gravamen of the dismissed first and second counts.
Mefferd v. City of Middletown, Superior Court, judicial district of Middlesex, Docket No. 069767 (November 3, 1995, Stanley, J.), a case from this judicial district, has persuasive parallels to this case. In that case, plaintiffs, Middletown police officers, sued the City, the police chief and a sergeant. The complaint had eleven counts. "Counts four, five and six allege intentional infliction of emotional distress, negligent infliction of emotional distress and interference with earning capacity, respectively." Id. "[T]he defendants filed a motion for summary judgment on all counts of the complaints on the ground that the actions are barred for failure to exhaust administrative remedies." Id. "The defendants argue[d] that the plaintiffs' claims are barred on the ground that they failed to exhaust the administrative remedies established in the collective bargaining agreement between the Middletown Police Department and the plaintiffs' union." Id. "In opposition, the plaintiffs assert[ed] that they exhausted their administrative remedies and, thus, this Court possesses subject matter jurisdiction." Id. The court did not dismiss as to most of the counts, namely those counts alleging statutory causes of action. The court stated: "General Statutes § 31-51bb creates an exception to the exhaustion doctrine where a plaintiff has a cause of action arising under the state or federal constitution or an independent statutory claim." Id.
The court dismissed the common law counts, intentional infliction of emotional distress, negligent infliction of emotional distress, and interference with earning capacity. The court held: CT Page 6921
 "Whereas, however, the remaining counts [three, four, and five] allege common law violations not predicated on any independent or statutory claims, the defendants' motion for summary judgment as to these claims is granted for failure to exhaust administrative remedies. See Cross v. Nearine,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 538675 (Feb. 17, 1995, Wagner, J.); Cassotto v. Winchester Board of Education, Superior Court, judicial district of Litchfield, Docket No. 062801 (Nov. 15, 1994, Pickett, J.)."
Mefferd v. City of Middletown, Superior Court, Judicial District of Middlesex, CV 06 97 67 (November 3, 1995, Stanley, J.).
Likewise, Cassotto v. Winchester Board of Education, Superior Court, judicial district of Litchfield, Docket No. 062801 (November 15, 1994,Pickett, J.), is persuasive authority for dismissal here. In that case, the plaintiff, a former head custodian of a school, sued the board of education and the school superintendent. He filed a multi-count complaint.
 "In count three, the plaintiff alleges that he was wrongfully discharged. In count four, the plaintiff alleges that since he was discharged without just cause, the Board breached its contract with the plaintiff's Union. In counts five and six, the plaintiff alleges intentional infliction of emotional distress against the Board of Education and Michaud, respectively. Id.
 "[T]he defendants filed an answer and revised special defenses. As to counts one through six, the defendants allege that they are immune from suit and that the plaintiff failed to exhaust administrative remedies set forth in the collective bargaining agreement between the Board and the Union." Id.
The court noted:
 "The defendants argue that the plaintiff is barred from filing this action on the ground that he failed to exhaust the administrative remedies set forth in the collective bargaining agreement between the Board CT Page 6922 of Education and the plaintiff's union." Id.
The court agreed with the defendants regarding the common law counts, namely the counts alleging wrongful discharge, discharge without cause, and intentional infliction of emotional stress."
 "Nevertheless, in regard to counts three through six, which are not predicated on any independent statutory or constitutional claim, the court has stated that:
 [i]t is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union. . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. . . . The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. (Citations omitted; internal quotation marks omitted.) Labbe v. Pension Commission, 229 Conn. 801, 811-12, (1994)."
Cassotto v. Winchester Board of Education, supra, Superior Court, Docket No. 062801.
The court dismissed counts three through six which alleged wrongful discharge, discharge without cause, and intentional infliction of emotional stress.
 "The plaintiff has failed to show that he is entitled to an exception to the exhaustion rule and, therefore, the motion for summary judgment as to counts three through six is granted." Id.
To like effect, see Cross v. Nearine, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 538675 (February 17, 1995, Wagner, J.); and Coiro v. Duran, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 382303 (April 20, 1992,Wagner, J.).
The plaintiff's claims for intentional and negligent infliction of emotional distress and intentional interference with contractual expectancies "arise directly from the relationship protected by the CT Page 6923 collective bargaining agreement." Cross v. Nearine, supra, Superior Court, Docket No. 538675.
Plaintiff did not exhaust the grievance procedure which was available to him.
The court holds that the exhaustion doctrine applies to counts three, four and five. Plaintiff is not entitled to any exception to the doctrine.
Counts three, four, and five are dismissed.
 SUMMARY
This action is dismissed.
Parker, J